158 B.R. 523 (1993)
In re F.W.D.C., INC., et al., Debtors.
Bankruptcy Nos. 92-22736-BKC-AJC to 92-22744-BKC-AJC, and 92-32738-BKC-AJC to 92-32747-BKC-AJC.
United States Bankruptcy Court, S.D. Florida.
August 18, 1993.
John D. Eaton, Timothy J. Norris, c/o Mershon Sawyer, Johnston Dunwoody & Cole, Miami, FL, for Chase Manhattan Bank.
Paul L. Orshan, c/o Kluger, Peretz, Kaplan & Berlin, P.A., Miami, FL, for F.D.I.C.
Janie Locke Anderson, Yale J. Fishman, c/o Coll Davidson Carter Smith Salter & Barkett, Miami, FL, for Bank of America.
Andrew R. Herron, c/o Strook & Strook & Lavan, Miami, FL, for debtor.

ORDER CONDITIONALLY GRANTING MOTION TO SUBSTANTIVELY CONSOLIDATE
A. JAY CRISTOL, Bankruptcy Judge.
THIS CAUSE was heard June 14, 1993 upon the "Joint Motion For Order Pursuant to Federal Rule of Bankruptcy Procedure 1015 And 11 U.S.C. § 105 Granting Substantive Consolidation of All The Debtors' Estates" filed by Bank of America, N.T. & S.A. and the Federal Deposit Insurance Corporation, as Receiver for First American Bank and Trust.[1] At the outset, the Court notes that although the Movants *524 seek to substantively consolidate all of the Debtors' estates for traditional reasons, such as reducing administrative expenses, their primary purpose is to effect a reduction of the amount of Chase Manhattan Bank, N.A.'s ("Chase") unsecured claim. The Law will permit the consolidation to save administrative expenses but will not reduce the claims.
FACTS
On June 4, 1992, the United States District Court for the Southern District of New York entered an order granting summary judgment in favor of Chase and against many of the Debtors with respect to certain promissory notes and guaranties that were given to Chase from these Debtors. A judgment based upon that order was entered July 21, 1992. Based upon this judgment, Chase filed proofs of claim against the estates of a majority of the Debtors.
On June 19, 1992, the first group of Cenvill Development Corporation's ("CDC") subsidiaries and partnerships (collectively, the "F.W.D.C. Debtors")[2] filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Thereafter, on August 10, 1992, another group of CDC's subsidiaries and partnerships (collectively, the "Chase Debtors")[3] filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Finally, on August 12, 1992, CDC itself and other of its subsidiaries (collectively, the "Cenvill Debtors")[4] filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. When discussed in the aggregate, the F.W.D.C. Debtors, the Chase Debtors, and the Cenvill Debtors are collectively referred to herein as the "Debtors".
On September 8, 1992 and September 9, 1992, this Court granted Chase relief from the automatic stay in order to continue with a foreclosure action pending against Cenvill Properties, Inc., Wynmoor Investments, Inc., Boca  Hamptons Investments, Inc. and the Chase Debtors in the Circuit Court in and for Palm Beach County, Florida. On August 5, 1992, the Florida state court entered a Final Judgment of Foreclosure.
On February 5, 1993, this Court entered an order substantively consolidating the estates of the F.W.D.C. Debtors and the Cenvill Debtors (collectively, the "Previously Consolidated Debtors"). As a result of this Court's entry of this order, Chase's claims against the F.W.D.C. Debtors and the Cenvill Debtors were merged into one claim against the estate of the Previously Consolidated Debtors. However, since the Chase Debtors were specifically not included within that order, Chase continues to have individual claims against the estates of each of the Chase Debtors.
On September 14, 1993, the foreclosure sale was held. Pursuant thereto, Chase received title to the Chase Debtors' collateral, worth approximately $45 million, that secured their indebtedness of approximately $63 million. Currently, the Chase Debtors' estates contain virtually no assets and the Previously Consolidated Debtors' estate contains assets worth approximately $4 million.
LEGAL ANALYSIS
The Eleventh Circuit Court of Appeals recently set forth the following standard for determining whether substantive consolidation is warranted:
The purpose of substantive consolidation is to insure the equitable treatment of all creditors. *** *** *** It *525 is agreed that the basic criterion by which to evaluate a proposed substantive consolidation is whether the economic prejudice of continued debtor separateness outweighs the economic prejudice of consolidation. In other words, a court must conduct a searching inquiry to insure that consolidation yields benefits offsetting the harm it inflicts on objecting parties.
The D.C. Circuit has elaborated a standard, which we adopt today, by which to determine whether to grant a motion for substantive consolidation. Under this standard, the proponent of substantive consolidation must show that (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit. When this showing is made, a presumption arises that creditors have not relied solely on the credit of one of the entities involved. Once the proponent has made this prima facie case for consolidation, the burden shifts to an objecting creditor to show that (1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation. Finally, if an objecting creditor has made this showing, the court may order consolidation only if it determines that the demonstrated benefits of consolidation heavily outweigh the harm.
Eastgroup Properties v. Southern Motel Assoc., Ltd., 935 F.2d 245, 248-49 (11th Cir.1991) (internal quotation marks and citations omitted).
The Movants argue, in sum, that the Chase Debtors should be substantively consolidated with the Previously Consolidated Debtors since:
1) there is a substantial identity between the entities to be consolidated;
2) such consolidation would prevent Chase from asserting an "inequitably" large claim against the Previously Consolidated Debtors.[5]
3) administrative costs would be reduced by requiring only one disclosure statement and plan as opposed to six (Previously Consolidated Debtors + 5 separate Chase Debtors);
4) there are significant intercompany obligations and the financial records are so poor and complex that it would be unreasonably expensive to determine who owes what to whom; and
5) Chase relied on the Debtors as an entity and not on the Chase Debtors individually.
Chase argues, in sum, that the Chase Debtors should not be substantively consolidated with the Previously Consolidated Debtors since:
1) if granted unconditionally, such consolidation would "inequitably" reduce Chase's claim against the Previously Consolidated Debtors.[6]
2) harm, in the form of additional administrative expenses, would be realized by having to reformulate the Previously Consolidated Debtors' previously approved disclosure statement and plan;
3) no benefit would be realized since the Chase Debtors have no assets;
4) the entanglement of the intercompany obligations is irrelevant as to whether the Chase Debtors should be substantively consolidated with the Previously Consolidated Debtors since  a) the Chase Debtors listed all of their intercompany obligations on their schedules as unliquidated, b) none of the Previously Consolidated Debtors have filed timely proofs of claim with regard to these intercompany obligations in any of the Chase Debtors' cases and c) therefore, none of the Previously Consolidated Debtors have intercompany claims against any of the Chase Debtors (See 11 U.S.C. § 1111(a) & Fed. R.Bankr.P. 3003(c)(2)); and
5) Chase relied on the Chase Debtors individually and not on the Debtors as an entity.
In order to make out a prima facie case for substantive consolidation, "the proponent of substantive consolidation must *526 show that (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit." Id. Chase does not dispute the Movants' argument that there is a "substantial identity" between the Previously Consolidated Debtors and the Chase Debtors. Chase does, however, dispute the Movants' argument that such "consolidation is necessary to avoid some harm or to realize some benefit."
As mentioned at the outset of this opinion, the Movants' primary purpose, and alleged benefit of substantive consolidation, is to reduce the amount of Chase's "inequitably" large claim against the Previously Consolidated Debtors. Such claim reduction would not be caused in the typical fashion, that is, as a result of varying debt to asset ratios among the entities to be consolidated. Rather, it is founded upon a legal argument (analyzed below) as to the amount of Chase's claim against the Debtors as they now exist (individually) as opposed to if all of the Debtors were substantively consolidated. Chase argues that if all of the Debtors were unconditionally[7] consolidated that instead of having one claim against the Chase Debtors for approximately $18 million ($63 million original indebtedness less $45 million collateral realized) and another claim against the Previously Consolidated Debtors for approximately $63 million, its claims would be merged into one claim against all of the Debtors for $18 million. Chase argues that such merger would inequitably require it to reduce its single claim against the newly consolidated debtor to reflect its receipt of the collateral from the newly consolidated debtor.[8] The Movants argue that Chase's claim against the Previously Consolidated Debtors is not $63 million but $18 million.
The Movants have presented a prima facie case under the Eastgroup standard. The savings in administrative costs by having one disclosure statement and plan instead of six[9] is of sufficient benefit to all of the Debtors' creditors. However, the Court will condition[10] the substantive consolidation to preserve the amount (determined below) of Chase's claim against the Previously Consolidated Debtors. Otherwise, Chase would be prejudiced by substantive consolidation.
The primary issue raised by the instant motion to consolidate concerns the amount of Chase's claim against the Previously Consolidated Debtors. Chase argues that, as a matter of law, it does not have to reduce its claim against the Previously Consolidated Debtors, as guarantors on certain loans to the Chase Debtors, to reflect its receipt of the Chase Debtors' collateral securing the Chase loans. The Movants argue that to not require Chase to reduce its claim against the Previously Consolidated Debtors to reflect its receipt of the Chase Debtors' collateral is incorrect as a matter of law and equity. Thus, the issue presented is whether a claim against a debtor-guarantor (the Previously Consolidated Debtors) must be reduced to reflect a creditor's receipt of a third party's (the Chase Debtors) collateral securing the third party's indebtedness guaranteed by the debtor.
*527 Chase relies on a long line of cases decided under the Bankruptcy Act of 1898 (the "Act"), particularly Ivanhoe Bldg. & Loan Ass'n v. Orr, 295 U.S. 243, 245, 55 S.Ct. 685, 686, 79 L.Ed. 1419 (1935), in support of its legal proposition that a claim against a debtor-guarantor (the Previously Consolidated Debtors) need not be reduced to reflect a creditor's receipt of a third party's (the Chase Debtors) collateral securing the third party's indebtedness guaranteed by the debtor.[11]See also Reconstruction Fin. Corp. v. Denver & Rio Grande W.R.R. Co., 328 U.S. 495, 529, 66 S.Ct. 1282, 1300, 90 L.Ed. 1400 (1946) ("The rule is settled in bankruptcy proceedings that a creditor secured by the property of others need not deduct the value of that collateral or its proceeds in proving his debt. Ivanhoe Bldg. & L. Asso. v. Orr . . ."). In Ivanhoe the Supreme Court stated that its
[d]ecision must be governed by the relevant provisions of the Bankruptcy Act. The definition found in § 1(23) is:
"`Secured creditor' shall include a creditor who has security for his debt upon the property of the bankrupt of a nature to be assignable under this Act, or who owns such a debt for which some indorser, surety, or other persons secondarily liable for the bankrupt has such security upon the bankrupt's assets."
Section 57(e) directs that
"Claims of secured creditors . . . shall be allowed for such sums only as to the courts seem to be owing over and above their securities . . . "
Unless the petitioner was a secured creditor as defined by § 1(23) it was not bound to have its security or the avails thereof valued and to prove only for the difference between that value and the face amount of the debt. Petitioner does not come within the definition, for at the date of bankruptcy it held no security against the bankrupt company's property, nor security given by any other person who in turn was secured by the bankrupt's assets. Sections 1(23) and 57(e) do not, therefore, forbid the proof of a claim for the principal of the bond with interest, though the petitioner may not collect and retain dividends which with the sum realized from the foreclosure will more than make up that amount.
Ivanhoe, 295 U.S. at 245-46, 55 S.Ct. at 686-87 (ellipses supplied & footnotes omitted).
The Movants argue that this line of case law is no longer applicable or controlling since:
1) it was decided under the Act based upon the Act's narrow definition of "secured creditor", a term which is not defined in the Bankruptcy Code;
2) the Bankruptcy Code focuses on secured "claims" as opposed to the Act's focus on secured "creditors"; and
3) the sections of the Act upon which this case law relied has been displaced by § 506(a)[12] of the Bankruptcy Code which requires that a claim against a debtor-guarantor (the Previously Consolidated Debtors) be reduced to reflect a creditor's receipt of a third party's (the Chase Debtors) collateral securing the third party's indebtedness guaranteed by the debtor.
The Court is not persuaded by the Movants' arguments and agrees with Chase *528 that this line of case law is still applicable and controlling despite its basis in the Act since:
1) the comparable portions of the Act (discussed in Ivanhoe) and Bankruptcy Code (11 U.S.C. § 506(a)) have the same effect; and
2) the Movants, unlike Chase, have not cited any case law supporting their position.
Thus, had the Court not, herein, substantively consolidated the Previously Consolidated Debtors with the Chase Debtors, Chase would have been allowed to prove a claim for the full amount of the indebtedness against the Previously Consolidated Debtors, as guarantors, without deducting the value of the Chase Debtors' collateral securing such indebtedness to reflect its receipt thereof. As stated earlier, the Court granted the Movants' motion to substantively consolidate subject to the condition that the amount of Chase's claim against the newly consolidated debtors shall be preserved and otherwise remain unaffected. Therefore, Chase shall be allowed to prove the full amount of its indebtedness, without reduction of its claim to reflect its receipt of the Chase Debtors' collateral securing such indebtedness, against the newly consolidated debtors.
Finally, it must be emphasized that although the Court is herein allowing a creditor to prove the total amount of an indebtedness against a guarantor-debtor without deducting the amount of collateral received from a third party, that such creditor may not collect more than the total amount of the indebtedness. Thus, if a creditor received collateral of a third party worth $8 million securing the third party's indebtedness of $10 million and the guarantor of this $10 million indebtedness were in bankruptcy, such creditor would be allowed to prove a claim of $10 million but would not be allowed to realize more than $2 million. In the instant case, such potential for collecting more than the total amount of the indebtedness is not a problem since the estate of the newly consolidated debtors contains assets worth approximately $4 million and Chase's deficiency claim is approximately $18 million. Accordingly, it is
ORDERED that
1) the "Joint Motion For Order Pursuant to Federal Rule of Bankruptcy Procedure 1015 And 11 U.S.C. § 105 Granting Substantive Consolidation of All The Debtors' Estates" filed by Bank of America, N.T. & S.A. and the Federal Deposit Insurance Corporation, as Receiver for First American Bank and Trust is granted and all of the Debtors shall be substantively consolidated; the "Chase Debtors", which consist of South Trail Plaza Associates, Eau Gallie Boulevard Associates, East Bay Properties, Flamingo West Properties, Inc. and Royal Palm Homes, Inc. shall be substantively consolidated with the "Previously Consolidated Debtors".
2) Chase Manhattan Bank, N.A. need not deduct the value of the Chase Debtors' collateral foreclosed upon by Chase on September 14, 1993 from the amount of the claims which it may prove against the newly consolidated debtors, for purposes of computing the total Chase claims. Chase must give credit against payment for any payments received to the extent that Chase shall not collect more than the total amount due.
DONE AND ORDERED.
NOTES
[1] By letter agreement dated July 17, 1992 entered into between the Debtors and Chase Manhattan Bank, N.A., the Debtors agreed not to seek substantive consolidation of the estates of the "Chase Debtors" (defined below) with any of the other Debtor entities. Thus, the Debtors were unable to make the instant motion. The Debtors do, however, support it.
[2] The F.W.D.C. Debtors consist of F.W.D.C., Inc., Cenvill Properties, Inc., F.W. Holding, Winky Real Estate, Inc., Preston, Inc., Wynville Realty, Inc., Centers in the Parc, Inc., CVW Limited Partnership, Inc. and Wynmoor Limited Partnership.
[3] The Chase Debtors consist of South Trail Plaza Associates, Eau Gallie Boulevard Associates, East Bay Properties, Flamingo West Properties, Inc. and Royal Palm Homes, Inc.
[4] The Cenvill Debtors consist of CDC, Boca Cen-Prop, Inc., Boca Hamptons Investment, Inc., Wynmoor Investment, Inc., First American Equity Polo Corporation, First American Equity Corporation, Seagrass Properties, Inc., Cenvill Contractors, Cenvill Illinois Corporation and Carillon Cablevision, Inc.
[5] This argument is explained below.
[6] See f.n. # 5.
[7] The Court has authority to conditionally grant a motion for substantive consolidation where equity so dictates as indicated by Eastgroup in the first quoted paragraph of this order and as stated in In re Parkway Calabasas, 89 B.R. 832, 837 (Bankr.C.D.Cal.1988) aff'd 949 F.2d 1058 (9th Cir.1991) and In re Giller, 962 F.2d 796, 799 (8th Cir.1992).
[8] This last argument, of course, assumes that Chase's legal argument with regard to the amount of its claim against the Previously Consolidated Debtors is correct.
[9] An idea which was not suggested is the substantive consolidation of the 5 Chase Debtors, which would require only 2 disclosure statements and plans. With regard to these administrative costs, the difference in the benefit of consolidating all of the Debtors versus the 5 Chase Debtors would not be as significant. This is because the Court previously approved the Previously Consolidated Debtors' disclosure statement and plan, both of which will have to be reworked if all of the Debtors are consolidated.
[10] See f.n. # 7.
[11] Chase cites In re Coastland Chrysler Plymouth, Inc., 76 B.R. 212 (Bankr.S.D.Fla.1987) (Britton, J.), as support for the continued validity of its proposition under the Bankruptcy Code. This case, however, is not on point. In Croteau, a bank filed a claim against a debtor to which the trustee objected. The trustee argued that 11 U.S.C. § 509(c) required the bank to reduce its claim to reflect its receipt of a partial reimbursement from its insurer. The Croteau court refused to interpret § 509(c) this way and allowed the full amount of the banks claim. The Croteau court did not directly address the broad issue before this Court since its focus was the interpretation of § 509(c). Moreover, no case has cited Croteau for Chase's proposition.
[12] Section 506(a) of the Bankruptcy Code provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.