**In re Michael JOHNSON, and Celine M. Johnson, Debtors.**

**No. 9:11–BK–09758–JPH.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Divison.

Feb. 17, 2012.

Order Granting Clarification Feb. 17, 2012.

Richard J. Hollander, Miller and Hollander, Naples, FL, for Debtors.

## ORDER SUSTAINING DEBTOR'S OBJECTION TO CLAIM NUMBER 2–2 OF RBC BANK, USA

JEFFERY P. HOPKINS, Bankruptcy Judge.

THIS CASE came on for hearing before the Court on December 14, 2011 on the Debtor's Objection to Claim No. 2–2 of RBC Bank, USA (the "Objection") (Doc. 22). The Court has also considered RBC Bank, USA's ("RBC") Response to the Objection (Doc. 23). In sum, the Debtors objected to RBC's proof of claim number 2–2 (the "Claim") on the basis that RBC filed the Claim for the full amount of a state court mortgage foreclosure judgment, including accrued post-judgment interest, without crediting the Debtors for the value of the property that was foreclosed. At the December 14, 2011 hearing, this Court sustained the Debtors' Objection and ordered that RBC's Claim be allowed in a reduced amount which reflects a credit for the value of the foreclosed property. The Court now offers this memorandum order as a more thorough explanation and clarification of its bench ruling.

### Facts

On June 26, 2006, R & D Collier Real Estate Holdings, LLC ("R & D") executed a promissory note in favor of Community Bank of Naples, N.A. in the amount of $280,000. According to the Florida Department of State Division of Corporations website, the Debtors are listed as the managing members of R & D. Debtor A. Michael Johnson signed the promissory note on behalf of R & D in that capacity. Additionally, both Debtors personally guaranteed R & D's obligations under the promissory note.

Sometime after the execution of the promissory note and personal guarantees, the note went into default, and RBC commenced a foreclosure action against— among other parties—R & D and the Debtors, in their individual capacities, in state court (the "Foreclosure Action").[1] On June 2, 2010, the state court in the Foreclosure Action entered a final judgment of foreclosure, awarding RBC a total sum of $357,357.47. The foreclosure sale was conducted on July 6, 2010, and the certificate of sale issued that same day. The certificate of title was subsequently issued on July 19, 2010. As a result of the foreclosure sale, RBC became the legal title holder and owner of the foreclosed property.

After taking title to the foreclosed property, RBC then filed a motion for a deficiency judgment against the Debtors. The motion for deficiency judgment was set for hearing on June 9, 2011. However, before that motion could be heard, the Debtors filed the instant bankruptcy case on May 23, 2011. A Suggestion of Bankruptcy was

---

1. *See* Case No. 09–4192–CA, filed in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida.

filed on behalf of the Debtors in the Foreclosure Action. Accordingly, the hearing on RBC's motion for deficiency judgment was cancelled, and no deficiency judgment was ever entered against the Debtors.

■ RBC filed its Claim in this case based on the foreclosure judgment entered in the Foreclosure Action.[2] The Claim asserts entitlement to $378,210.17 as of the petition date, which amount includes the base amount of the foreclosure judgment plus accrued post-judgment interest at 6% per annum as provided under Florida law.

### Positions of the Parties

The Debtors objected to RBC's Claim based on the fact that it does not reflect the value of the foreclosed property which RBC now owns as a result of the Foreclosure Action. For purposes of the instant claim objection, the Debtors have accepted RBC's appraisal value of $182,000.[3] Accordingly, the Debtors argue that RBC's Claim must be reduced by that amount.

RBC, on the other hand, responds that it is permitted to file its Claim in the full amount of indebtedness without deducting the value of the foreclosed property. RBC relies on several cases which stand for the proposition that a creditor's claim against a guarantor/debtor-in-bankruptcy need not be reduced to reflect a creditor's receipt of a third party's collateral (here, the foreclosed property formerly owned by R & D), which secured the third party's indebtedness guaranteed by the debtor.

### Legal Analysis

There is legal authority supporting the positions of both parties. While such legal authority may appear at first blush to be in conflict, a more detailed examination reveals that the case law on this issue is reconcilable.

Judge Williamson recently ruled in *In re Anson,* 457 B.R. 130 (Bankr.M.D.Fla.2011) that a creditor's claim must be facially reduced to account for the value of the collateral which the creditor has acquired via foreclosure. In *Anson,* a creditor filed two separate lawsuits in state court and obtained two separate judgments in those actions. In one case, the creditor foreclosed a second mortgage, took title to the property, and proceeded to obtain a deficiency judgment against the individual debtors-guarantors. In the second case, the same creditor, who also held the first mortgage on the property (which did not need to be foreclosed in light of the foreclosure of the second mortgage), obtained a money judgment against the debtors based on their personal guarantees of the mortgagor's indebtedness under the note. When the individual guarantors filed bankruptcy, the creditor filed a proof of claim seeking to recover the amount of both the deficiency judgment and the guaranty judgment. The proof of claim did not credit the debtors for the value of the property which the creditor had foreclosed. Recognizing that the creditor was essentially trying to effectuate a double recovery, Judge Williamson required that the creditor's claim be reduced by the value of the property acquired via foreclosure.

■ In the instant case, while RBC has not obtained two separate judgments, its proof of claim can be construed as an attempt to accomplish a similar result as

**2.** The Court does not suggest that RBC's inability to obtain a deficiency judgment precludes it from filing a proof of claim against the Debtors' estate. Indeed, 11 U.S.C. § 101(5)(A) contains a very broad definition of "claim" and does not require that a creditor's right to payment be reduced to judgment.

**3.** This amount is referenced in a letter from RBC's counsel to the Debtors' counsel in the Foreclosure Action. *See* Exhibit "A" to the Debtor's Objection (Doc. 22).

the creditor in *Anson*, namely to recover the total indebtedness despite the fact that RBC has already foreclosed its mortgage and acquired the property. Like *Anson*, RBC's Claim does not credit the Debtors for the value of the foreclosed property. In reliance on the principle espoused in *Anson* that a creditor is not entitled to a double recovery, and that the value of the foreclosed property must be taken into account, this Court ruled at the December 14, 2011 hearing that RBC's Claim be reduced by $182,000, the value of the foreclosed property.

The Court believes that *Anson* was properly decided, and that the principles established in *Anson* ought to apply in this case. However, the Court also acknowledges that a line of cases exists, as cited by RBC in its response to the Debtors' Objection (Doc. 23), which does not require a creditor's claim to be reduced to reflect the value of the acquired collateral. Instead, under these cases, creditors are permitted to file proofs of claim for the full amount of indebtedness. *See Ivanhoe Building & Loan Ass'n of Newark, N.J. v. Orr*, 295 U.S. 243, 245, 55 S.Ct. 685, 79 L.Ed. 1419 (1935); *Reconstruction Fin. Corp. v. Denver & Rio Grande W. R.R. Co.*, 328 U.S. 495, 529, 66 S.Ct. 1384, 90 L.Ed. 1400 (1946) ("The rule is settled in bankruptcy proceedings that a creditor secured by the property of others need not deduct the value of that collateral or its proceeds in proving his debt.").

While *Orr* predates the enactment of the current Bankruptcy Code, courts have held that the rule of law announced in *Orr* is still valid, given that § 506 of the current Bankruptcy Code has the same effect as the provisions relied on by the Court in *Orr*. *See, e.g., In re F.W.D.C., Inc.*, 158 B.R. 523, 528 (Bankr.S.D.Fla.1993) (Cristol, J.) (finding *Orr* to be good law, and holding that the creditor was not required to reduce its claim to reflect its receipt of

the non-debtor's collateral securing the indebtedness). Assuming that *Orr* does in fact remain good law, and further that *In re F.W.D.C.* was properly decided, it may appear as though a conflict exists between *Anson* on one hand (requiring a creditor's proof of claim to be reduced to reflect the value of the creditor's collateral) and *Orr* and *In re F.W.D.C.* on the other (permitting claims to be filed in the total amount of indebtedness notwithstanding a creditor's receipt of collateral). However, further analysis reveals that these cases are actually reconcilable and not inherently inconsistent.

The *Anson* court was concerned that the creditor was attempting to achieve a windfall or double recovery by asserting a right to the full amount of both the guaranty and deficiency, despite the fact that the creditor had already acquired title to the property securing the debt. This same concern, however, was expressed in both the *Orr* and *In re F.W.D.C.* decisions. *See Orr*, 295 U.S. at 246, 55 S.Ct. 685 ("the petitioner may not collect and retain dividends which with the sum realized from the foreclosure will more than make up [the total indebtedness]"); *see also In re F.W.D.C*, 158 B.R. at 528 ("it must be emphasized that although the court is herein allowing a creditor to prove the total amount of an indebtedness against a guarantor-debtor without deducting the amount of collateral received from a third party, that such creditor may not collect more than the total amount of the indebtedness"). Thus, all three decisions essentially reach the same result: no more than a full recovery of the indebtedness may be had. It is the approach in reaching this result that differs.

Under the *Anson* approach, the Court would reduce the facial proof of claim amount, while the *Orr* approach would allow a proof of claim to be filed, on its face,

for the full amount, with the caveat that any distribution made within the bankruptcy proceeding could not exceed the total indebtedness. Notably, the determination on which approach to follow may have practical consequences. For example, in the context of 11 U.S.C. § 109(e), whether a claim is facially reduced could potentially impact a debtor's debt limit and corresponding eligibility to be a chapter 13 debtor.[4] The Court finds that while the *Anson* court had good reason to reduce the facial amount of the claim, in this case it will adhere to the *Orr* approach.

In *Anson,* the chapter 11 debtors proposed to pay their unsecured creditors 100% of the allowed unsecured claims. The creditor-bank was an unsecured creditor by virtue of its claim arising from the debtors' personal guarantees. Thus, if the bank's proof of claim (comprised of both the guaranty and deficiency judgments) had been allowed to stand as filed—without reduction for the value of the foreclosed property—the creditor would have obtained a double recovery vis-a-vis the proposed plan treatment. Therefore, out of necessity, the court had to reduce the claim on its face.

The same is not true in this case. The Debtors do not propose to pay their unsecured creditors 100% of the face amount of their claims as filed. Thus, the prohibition on creditors receiving more than a full recovery can still be given effect in this

case, even if RBC's Claim is allowed to stand for the full amount and is not reduced by the value its collateral, because there is no risk that RBC will receive payment in excess of the total indebtedness. Whereas the creditor-bank in *Anson* stood to gain more than a full recovery by virtue of the proposed plan treatment, no such potential exists here under the Debtors' proposed chapter 13 plan.[5] This renders the instant case similar to *In re F.W.D.C.*, in which the court noted that "such potential for collecting more than the total amount of the indebtedness is not a problem since the estate ... contains assets worth approximately $4 million and [the creditor's] deficiency claim is approximately $18 million." *In re F.W.D.C.*, 158 B.R. at 528.

Likewise, in this case, even when factoring in the $182,000 value ascribed to the foreclosed property, RBC is still owed over $175,000 from its judgment in the Foreclosure Action. There is no risk that this amount will be paid to RBC—or will otherwise be exceeded—through the Debtors' chapter 13 plan.

Given that *Orr* is a decision of the United States Supreme Court, and absent the same proposed treatment of 100% payments to unsecured creditors as existed in *Anson,* the Court will adhere to the approach established in *Orr* and followed in *In re F.W.D.C,* and not reduce the facial amount of the Claim.[6] Accordingly, it is

4. The Court notes that RBC has challenged the Debtors' eligibility in this case (Doc. 16). This issue is scheduled to be addressed at the continued confirmation hearing on February 16, 2012. The Court expresses no opinion herein as to whether RBC's Claim, in whole or in part, constitutes a "noncontingent, liquidated, unsecured" debt for purposes of § 109(e).

5. The Debtors' current plan (Doc. 2) proposes monthly payments to the chapter 13 trustee of $193 for 60 months, and estimates a dividend to unsecured creditors of $6,714.

6. The Court does not mean to imply that *Anson* is not good law, or that *Anson* should not be followed in appropriate circumstances. Indeed, the facts of *Anson* demonstrate that instead of deviating from the rule of law established in *Orr,* the *Anson* court actually remained faithful to its underlying policy while also addressing the concern regarding an attempt to obtain an impermissible windfall. Accordingly, it appears that *Anson* is both compatible and reconcilable with *Orr.*

ORDERED that the Debtors' Objection to Claim No. 2–2 of RBC (Doc. 22) is SUSTAINED to the extent that the Claim purports to entitle RBC to more than a full recovery of its total indebtedness. It is further

ORDERED that RBC's Claim may remain in the full facial amount, as filed, but that any recovery on the debt represented by the Claim be decreased by $182,000.00 (i.e., the value assigned to the foreclosed property for purposes of the instant claims objection).

**DONE AND ORDERED.**

### *ORDER GRANTING MOTION FOR CLARIFICATION*

THIS CASE came before the Court without a hearing on the Limited Motion for Rehearing and/or Clarification (Doc. 36) of this Court's January 25, 2012 Order Sustaining the Debtor's Objection to Claim # 2–2 of RBC Bank, USA (Doc. 29). The Court finds that RBC Bank, USA's Limited Motion for Clarification is well taken. Accordingly, the Court hereby amends the second decretal paragraph on page 8 of its January 25, 2012 Order (Doc. 29) to read as follows:

RBC's Claim may remain in the full facial amount, as filed, but in no event shall RBC receive distributions in this Chapter 13 bankruptcy case in excess of $196,210.17, which amount constitutes the difference between RBC's Claim in the facial amount of $378,210.17 and the bank-appraised value of the collateral of $182,000.

It is so ordered.

**DONE AND ORDERED.**