PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4633
_____

NUVEEN MUNICIPAL TRUST, on behalf of its series
Nuveen High Yield Municipal Bond Fund,
a Massachusetts Business Trust,

Appellant

v.

WITHUMSMITH BROWN, P.C., A New Jersey Professional
Corporation; LINDABURY, MCCORMICK, ESTABROOK
& COOPER P.C.,
a New Jersey Professional Corporation

_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 3-08-cv-05994)
District Judge: Honorable Garrett E. Brown, Jr.

_____

Argued June 21, 2012
_____

Before: AMBRO, VANASKIE
and ALDISERT, <u>Circuit Judges</u>

(Opinion filed: August 16, 2012)

Alexander Bilus, Esquire
Robert C. Heim, Esquire (Argued)
Brielle M. Rey, Esquire
Wayne Pollock, Esquire
Dechert LLP
2929 Arch Street
18th Floor, Circa Centre
Philadelphia, PA   19104

G. Eric Brunstad, Jr., Esquire (Argued)
Matthew J. Delude, Esquire
Collin O. Udell, Esquire
Dechert LLP
90 State House Square
Hartford, CT   06103

David P. Stich, Esquire
Solomon Blum Heymann & Stich
40 Wall Street, 35th Floor
New York, NY   10005

Professor Stephen B. Burbank
3400 Chestnut Street
Philadelphia, PA 19104

          Counsel for Appellant

Michael J. Canning, Esquire (Argued)

Catherine J. Bick, Esquire
Donald F. Campbell, Jr., Esquire (Argued)
Jaclyn B. Kass, Esquire
Giordano, Halleran & Cielsa
125 Half Mile Road, Suite 300
Red Bank, NJ   07701

      Counsel for Appellee
      WithumSmith+Brown, P.C.

William A. Cambria, Esquire
Louis A. Modugno, Esquire (Argued)
James J. DiGiulio, Esquire
William F. O'Connor, Jr., Esquire
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ  07962-2075

      Counsel for Appellee
      Lindabury, McCormick, Estabrook & Cooper, P.C.

Christian D. Wright, Esquire
Benjamin Z. Grossberg, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street, 17th Floor
Rodney Square
Wilmington, DE  19801

      Amicus Counsel for
      Professor Geoffrey C. Hazard, Jr.

---

## OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

This case is on appeal to us for the second time. It arises from a loan transaction between Appellant Nuveen Municipal Trust ("Nuveen"), on behalf of its "Nuveen High Yield Municipal Bond Fund," and Bayonne Medical Center ("Bayonne"). In connection with the transaction, Bayonne provided Nuveen with an audit report authored by Bayonne's accounting firm, Appellee WithumSmith+Brown, P.C. ("Withum"), and an opinion letter authored by Bayonne's counsel, Appellee Lindabury, McCormick, Estabrook & Cooper P.C. ("Lindabury"). Soon after the transaction, Bayonne filed a petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. Nuveen contends that the audit report and opinion letter concealed problem aspects of Bayonne's financial condition, and had it known about these financial issues, it would not have entered into the transaction.

Nuveen filed this action against Withum and Lindabury, asserting fraud (as to Withum only), negligent misrepresentation, and malpractice (as to Lindabury only), and representing that the District Court had diversity jurisdiction under 28 U.S.C. § 1332. The Court dismissed the action with prejudice based on Nuveen's noncompliance with New Jersey's Affidavit of Merit statute, N.J. Stat. Ann. §§ 2A:53A-26 *et seq*. (the "AOM Statute" or "Statute"), which requires the timely filing of an affidavit of merit attesting to the viability of claims in certain actions against professionals.

4

On initial appeal to us, Nuveen brought to our attention *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192 (3d Cir. 2007), which held that, for purposes of diversity jurisdiction, the citizenship of a trust is determined by the citizenship of its beneficial shareholders. Because Nuveen may be considered a trust, *Emerald* called into question the District Court's previously asserted basis for jurisdiction. We granted Nuveen's unopposed motion to remand the case to allow the District Court to reconsider its jurisdiction.

On remand, Withum and Lindabury raised a new basis for jurisdiction—that the action was "related to" Bayonne's bankruptcy proceeding, and thus that the District Court had jurisdiction under 28 U.S.C. § 1334(b). The Court accepted this basis for jurisdiction and re-entered its order dismissing the action with prejudice. Both the jurisdictional decision and its dismissal of the action are on appeal to us now. Nuveen also raises two new choice-of-law arguments on appeal: that the AOM Statute is a procedural pleading requirement that conflicts with Federal Rule of Civil Procedure 8 such that the Statute cannot be applied in federal court, as federal procedural rules preempt conflicting state ones; or that certain provisions to protect plaintiffs with respect to the Statute are substantive state law that must be applied by a federal court under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny.

We agree that the District Court had "related to" jurisdiction under 28 U.S.C. § 1334(b). We further hold that the AOM Statute can be applied by a federal court without conflicting with Rule 8, and that the protections Nuveen identifies are procedural under *Erie*, thus not requiring a federal court to follow them. If the AOM Statute applies to the action, we believe that Nuveen's noncompliance with it calls for the action's dismissal, but question whether this

5

action is subject to the Statute. Because the New Jersey Supreme Court has not addressed key issues regarding the application of the Statute, we reserve deciding whether the District Court was correct to dismiss the action with prejudice and certify two questions of law regarding the Statute to the New Jersey Supreme Court.

## I. Factual and Procedural Background

In the attempt to salvage its action from dismissal purely based on its counsel not filing timely affidavits of merits, Nuveen's arguments fall into four broad categories: (i) jurisdiction; (ii) the AOM Statute's application in federal court under *Erie* and its progeny; (iii) the Statute's application to its action as a legal matter; and (iv) whether its noncompliance with the Statute can be excused. To decide these issues, we detail the history of the loan transaction, Bayonne's bankruptcy proceeding, this action, the Statute, and the proceedings in and decisions of the District Court.

A. <u>Loan Transaction and Bayonne's Bankruptcy</u>

In October 2006, Nuveen, on behalf of one of its bond funds, purchased a $10 million Bond Anticipation Note ("BAN") from Bayonne. In connection with the transaction, Bayonne provided Nuveen with an audit report prepared by Withum regarding Bayonne's company-prepared 2005 financial statements. As Bayonne's counsel in the transaction, Lindabury provided Nuveen with an opinion letter addressing Bayonne's ability to repay the BAN. It included the typical opinion that Bayonne had the power and authority to enter into the BAN transaction and that, other than one disclosed investigation not relevant here, there were no investigations or suits that "could reasonably be expected to . . . materially [and] adversely affect the capability of [Bayonne] to comply with its obligations under [the BAN], or

6

materially [and] adversely affect the transactions contemplated to be consummated on the part of [Bayonne] as described in the [BAN]."

Six months later, in April 2007, Bayonne filed its Chapter 11 petition in the Bankruptcy Court for the District of New Jersey. In October 2007, the Bank of New York, master trustee, filed a proof of claim on behalf of Nuveen and other secured creditors totaling $46,673,886.79. Nuveen's portion of the claim was for $10,533,989.84 (including approximately $10,000,000 principal on the BAN, $436,136.98 in interest, and $97,852.86 for Nuveen's fees and expenses).

As a prelude to this action, in May 2008 Nuveen requested that Bayonne provide it with documents to determine whether it had a cause of action against Bayonne's officers, directors, and "pre-petition professionals" for misrepresentations or other conduct that induced Nuveen to purchase the BAN. Bayonne did not respond, and Nuveen served a subpoena on it and then filed a motion to compel. Notably, in the materials accompanying its motion to compel, Nuveen represented that any amounts it recovered from such actions would reduce its claim against Bayonne's bankruptcy estate. It also specifically identified potential suits against Withum and Lindabury.

No doubt partially in response to Nuveen's (and possibly other creditors') requests for documents, Bayonne made a global settlement agreement among it, the Official Committee of Unsecured Creditors, and certain secured creditors that included Nuveen (the "Settlement Agreement"). Approved by the Bankruptcy Court in September 2008, the Settlement Agreement provided that it would be implemented by a plan of liquidation. In the event the confirmed plan did not conform to the Settlement Agreement, or Bayonne's bankruptcy case was converted or dismissed, the Agreement

7

would control and survive.[1]  It further provided that the secured creditors would not pursue claims against any of Bayonne's former officers, directors or trustees, but preserved the secured creditors' right to bring claims against any third parties (*i.e.*, Withum and Lindabury) retained by, or who had rendered services to, Bayonne.

The Settlement Agreement granted the secured creditors a general unsecured claim in the amount of $46,673,886.79 (the dollar amount asserted in the master trustee's proof of claim), which would be reduced "dollar for dollar" for sums received by the secured creditors through certain distributions defined in the Agreement.  Thus it effectively fixed Nuveen's claim against Bayonne's estate as a secured claim in an amount to be determined based on funds in Bayonne's estate and an unsecured claim to be paid *pro rata* with other unsecured claims.

B. District Court Complaint

In accordance with the Settlement Agreement, Nuveen filed this action against Withum and Lindabury in December 2008.  As to Withum, Nuveen asserted that Bayonne's 2005 financial statements were false and misleading because they recorded substantial revenue from a sham charitable pledge and showed as assets a substantial amount of uncollectible accounts receivable.  Nuveen contended that if Withum had examined the financial statements consistent with Generally Accepted Accounting Principles and specific accounting standards promulgated by the American Institute for Certified

---

[1]  The Bankruptcy Court approved Bayonne's plan of liquidation (the "Plan") in April 2009, approximately four months after Nuveen filed this action.  The Plan incorporates the Settlement Agreement in full.

8

Public Accountants, it would not have issued its audit report because, once the sham revenue and uncollectible receivables were considered, it would have known that Bayonne either was insolvent or soon would become insolvent. Based on these allegations, Nuveen asserted three claims against Withum: (i) common law fraud; (ii) aiding and abetting common law fraud; and (iii) negligent misrepresentation.

As to Lindabury, Nuveen asserted that Lindabury's opinion letter was misleading because it failed to disclose a certain repayment obligation Bayonne owed under Medicare. Based on this allegation, Nuveen asserted against Lindabury (i) negligent misrepresentation and (ii) malpractice in preparing the opinion.[2]

Nuveen sought compensatory damages, prejudgment interest, costs, punitive damages, and other relief. It stated that its compensatory damages were then unknown, but believed them to be $9.5 million less any amounts recovered in Bayonne's bankruptcy proceeding plus attorney's fees incurred in the bankruptcy proceeding.

---

[2] The opinion letter stated that Lindabury relied on certificates of Bayonne's officers that it assumed were true and correct in all respects, and that it undertook no independent investigation to determine the existence or absence of any factual matters. The certificates, dated the loan closing date, were from Robert H. Evans, Bayonne's President and Chief Executive Officer, and Paul Mohrle, Bayonne's Acting Chief Financial Officer. As such, absent fraud (and there are no allegations to that effect as to Lindabury or to its pre-closing knowledge contrary to its opinion), there is doubt that Nuveen has viable causes of action against Lindabury based on the opinion letter.

In preparing its complaint, Nuveen communicated with two experts. First, in April 2008 it discussed Withum's audit report with Gordon Yale, a Certified Public Accountant. Based on his affidavit later filed with the District Court, Yale concluded that there was a "reasonable probability" that Withum's work that is the subject of the complaint fell outside of applicable professional standards. The affidavit also verifies that in April 2008 Yale submitted to Nuveen's counsel a 16-page report addressing the matters alleged against Withum in the complaint.

Second, in November 2008 Nuveen called Robert Doty, a bond and securities lawyer. Nuveen's counsel described the allegations against Lindabury in the complaint to Doty during a phone conversation. Based on that information, as verified in his affidavit subsequently submitted to the District Court, Doty stated that he believed there was a "reasonable probability" Lindabury's opinion fell outside applicable professional standards.

C. AOM Statute

The New Jersey legislature enacted the AOM Statute "as part of a tort reform package 'designed to strike a fair balance between preserving a person's right to sue and controlling nuisance suits.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 579 (3d Cir. 2003) (quoting *Palanque v. Lambert-Woolley*, 774 A.2d 501, 505 (N.J. 2001)). It requires that a plaintiff filing "any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed professional" provide each defendant with "an affidavit of an appropriate licensed person [stating] that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside

acceptable professional or occupational standards or treatment practices." N.J. Stat. Ann. § 2A:53A-27. This affidavit must be provided within 60 days after the defendant files its answer. *Id.* For good cause shown, the Statute provides for one extension period of an additional 60 days contiguous to the initial 60-day period. *Id.*

The penalty for not following the AOM Statute is severe. Absent a showing of one of four limited exceptions,[3] the failure to file the affidavit "shall be deemed a failure to state a cause of action." *Id.* § 2A:53A-29. Thus, unless the plaintiff can show one of the four exceptions, if an affidavit of merit is not filed within the 60- or extended 120-day period, the complaint will be dismissed with prejudice.

Aware of this harsh consequence, the New Jersey Supreme Court instituted two safeguards to aid plaintiffs in complying with the AOM Statute. First, it directed that New Jersey's Civil Case Information Sheet be amended to contain the question, "IS THIS A PROFESSIONAL MALPRACTICE CASE?," and boxes to check "YES" or

---

[3] They are: (i) a statutory exception regarding lack of information; (ii) a "common knowledge" exception; (iii) substantial compliance with the affidavit of merit requirement; or (iv) "extraordinary circumstances" that warrant equitable relief. *See* N.J. Stat. Ann. § 2A:53A-28 (detailing the statutory exception); *Ferreira v. Rancocas Orthopedic Assocs.*, 836 A.2d 779, 782–83 (N.J. 2003) (detailing the "extraordinary circumstances" exception); *Hubbard v. Reed*, 774 A.2d 495, 501 (N.J. 2001) (establishing the "common knowledge" exception); *Cornblatt v. Barow*, 708 A.2d 401, 411–12 (N.J. 1996) (establishing that the substantial compliance doctrine applies to the affidavit requirement).

11

"NO." Underneath the question is the following sentence: "IF YOU HAVE CHECKED 'YES,' SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT." *See Burns v. Belafsky*, 766 A.2d 1095, 1101 (N.J. 1999).

Second, the New Jersey Supreme Court required that an accelerated case management conference be held within 90 days of the service of the answer in all malpractice actions. *See Ferreira v. Rancocas Orthopedic Assocs.*, 836 A.2d 779, 785 (N.J. 2003). At this conference, if the plaintiff has not filed an affidavit, the trial court is to remind it of the requirement. *Id.*

D.  Proceedings in the District Court

Along with its complaint, Nuveen filed the standard Civil Cover Sheet used in the federal court. Unlike New Jersey's Civil Case Information Sheet, the Civil Cover Sheet here did not contain the question, box, or any notice regarding the AOM Statute.

In January 2009, Withum and Lindabury filed answers to the complaint. (Their answers contained third-party complaints against Bayonne's officers, which they later consented to the dismissal of without prejudice.) On June 4, 2009, 142 days after they filed their answers, Withum and Lindabury filed separate motions to dismiss with prejudice the actions against them based on Nuveen's failure to serve a timely affidavit of merit.[4] Nuveen provided the two expert

---

[4] Specifically, Lindabury's motion was styled as a motion for summary judgment, though it acknowledged that the motion was functionally equivalent to a motion to dismiss. Withum's motion was a motion to dismiss. The District Court regarded

12

affidavits discussed above the day after the motions to dismiss were filed.

Between the filings of the answers and the motions to dismiss, Withum, Lindabury, and Nuveen formally conferenced twice. In April 2009, they held a telephone conference under Federal Rule of Civil Procedure 26(f). Nuveen's counsel subsequently circulated a draft report on the Rule 26(f) conference. In May 2009, Magistrate Judge Douglas E. Arpert held a scheduling conference. At no time did Withum or Lindabury mention the AOM Statute. Contrary to the practice of New Jersey state courts, the District Court did not hold a status conference within 90 days of the filing of the answers nor remind Nuveen of the affidavit requirement.

Nuveen also filed a response to the motions to dismiss in which it raised four arguments that its action should be allowed to proceed. First, it asserted that the AOM Statute did not apply to any of its claims because they were for economic damages, which are not "property damages" subject to the Statute. Alternatively, it contended that the Statute did not apply to its non-negligence and non-malpractice claims—specifically its fraud claims against Withum. Third, assuming the Statute applied, Nuveen argued that its noncompliance should be excused because it substantially complied with the Statute. Alternatively, and finally, it argued that extraordinary circumstances required dismissal of the action without prejudice. Nuveen also stated that it sought to recover the amount it had paid for the BAN, plus related costs and interest, less any amounts it recovered prior to the end of the action, including any disbursements from Bayonne's bankruptcy estate.

them both as motions to dismiss, and proceeded to analyze them under Federal Rule of Civil Procedure 12(b)(6).

13

E. District Court Decisions

The District Court rejected each of Nuveen's arguments regarding the AOM Statute. In holding that the monetary recovery sought by Nuveen was subject to the Statute, it cited two New Jersey intermediate state court decisions—*Cornblatt v. Barow*, 696 A.2d 65, 68 (N.J. Super. Ct. App. Div. 1997), *rev'd on other grounds*, 708 A.2d 401 (N.J. 1998), and *Nagim v. New Jersey Transit*, 848 A.2d 61, 70 (N.J. Super. Ct. Law Div. 2003)—for their statements that a claim against an attorney for alleged malpractice is a claim for "property damages" and that these damages include claims for monetary damages.

In considering the fraud claims against Withum, the District Court cited *Couri v. Gardner*, 801 A.2d 1134, 1141 (N.J. 2002), for its statement that the nature of the legal inquiry should guide the assessment of whether the Statute applies to a claim. Because the complaint contained numerous references to accounting standards, the Court concluded that the Statute applied to all of the causes of action against Withum. Finally, it noted that Nuveen's failure to file an affidavit of merit was caused solely by attorney inadvertence, which was not a reasonable explanation to excuse Nuveen's noncompliance with the Statute or to find the existence of extraordinary circumstances.

On remand regarding jurisdiction, the District Court agreed with Withum's and Lindabury's argument that the action was related to Bayonne's bankruptcy proceeding because its outcome conceivably could affect the distribution of the estate's assets. It noted that though the Settlement Agreement fixed Nuveen's claim in the bankruptcy proceeding, it did not fix its recovery. Because Nuveen simultaneously was seeking the same damages—unpaid principal and interest on the BAN—from Bayonne's estate as

14

well as Withum and Lindabury, if Nuveen recovered from Withum and Lindabury first, its claim against Bayonne's estate would need to be reduced, thereby increasing the amount of assets available for distribution to other creditors. (In short, Nuveen could not recover twice for the same loss.) The District Court thus held that it had jurisdiction under 28 U.S.C. § 1334(b).

## II. Jurisdiction and Standard of Review

Whether the District Court had jurisdiction is an issue on appeal. We have jurisdiction under 28 U.S.C. § 1291 over its final decisions that it had jurisdiction under 28 U.S.C. § 1334(b), and to dismiss this action.

Whether subject matter jurisdiction exists is a question of law requiring *de novo* review. *W.R. Grace & Co. v. Chakarian* (*In re W.R. Grace & Co.*), 591 F.3d 164, 170 n.7 (3d Cir. 2009). Our review of a motion to dismiss is plenary. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 579 (3d Cir. 2003). We "accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them, and we affirm the order of dismissal only if the pleading does not plausibly suggest an entitlement to relief." *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 242 (3d Cir. 2008). Similarly, we review *de novo* the District Court's determinations regarding New Jersey state law. *Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 273 (3d Cir. 2002).

## III. Subject Matter Jurisdiction

A. Burden of Proof

Nuveen argues that the District Court inappropriately relieved Withum and Lindabury of their burden of proving

that the Court had jurisdiction. As such, because Nuveen's arguments cast doubt on jurisdiction, the Court should have construed this doubt in favor of Nuveen and held that it lacked jurisdiction.

Nuveen is correct that the party asserting a federal court's jurisdiction bears the burden of proving that jurisdiction exists. *See, e.g., Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1194 (2010) ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it."). Federal courts are presumed not to have jurisdiction without affirmative evidence of this fact. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). However, a district court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Indeed, a district court has an independent obligation to determine whether subject matter jurisdiction exists, even if its jurisdiction is not challenged. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Though the District Court did not state explicitly that Withum and Lindabury bore the burden of establishing jurisdiction, its decision confirms that it required them to prove jurisdiction and that it considered the evidence presented regarding jurisdiction. For example, the Court stated that it was "persuaded" that, at the time Nuveen filed the complaint in December 2008, it was conceivable that the outcome of this action would have an effect on Bayonne's bankruptcy proceeding. Thus, it proceeded correctly in considering its jurisdiction.

16

B.  Subject Matter Jurisdiction under 28 U.S.C. § 1334(b)

1.  Principles of "Related To" Jurisdiction

Section 1334(b) provides that "district courts . . . have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11."  28 U.S.C. § 1334(b) (emphasis added).  In *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), *overruled in part by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 134–35 (1995), we established that a proceeding is "related to" a Chapter 11 proceeding if the "outcome of [the] proceeding could *conceivably* have any effect on the estate being administered in bankruptcy."  *Id.* at 994 (emphasis added).

The key inquiry no doubt is conceivability. "Certainty, or even likelihood [of effect on the estate being administered in bankruptcy,] is not a requirement." *Copelin v. Spirco, Inc.*, 182 F.3d 174, 179 (3d Cir. 1999) (quoting *Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999)) (alteration in original).  An action thus generally is "related to" a bankruptcy proceeding "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994.

The Supreme Court endorsed *Pacor*'s conceivability standard with the caveats that "related to" jurisdiction "cannot be limitless," and that the critical component of the *Pacor* test is that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 & n.6 (1995). In addition, "related to" jurisdiction does not exist if another action would need to be filed before the current action could

17

affect a bankruptcy proceeding. *See W.R. Grace*, 591 F.3d at 172; *In re Fed.-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002).

Conceivability is determined at the time a lawsuit is filed. *See Grupo Dataflux v. Atlas Global Grp., L.P.,* 541 U.S. 567, 570–71 (2004) ("It has long been the case that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824))). Although we once declined to apply the time of filing rule in a federal question case, *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492 (3d Cir. 1996), subsequent Supreme Court decisions demonstrate the continuing vitality of the rule. *See Grupo Dataflux*, 541 U.S. at 582 ("We decline to endorse a new exception to a time-of-filing rule that has a pedigree of almost two centuries. Uncertainty regarding the question of jurisdiction is particularly undesirable, and collateral litigation on the point particularly wasteful."); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003) ("[J]urisdiction of the Court depends upon the state of things at the time of the action brought." (quoting *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993))). Indeed, the strength and longevity of this rule has led courts to hold that confirmation of a bankruptcy plan does not divest a district court of related-to jurisdiction over pre-confirmation claims. *See, e.g.*, *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325, 336 (5th Cir. 2008); *ConocoPhillips Co. v. SemGroup, L.P. (In re SemCrude, L.P.)*, 428 B.R. 82, 96–98 (Bankr. D. Del. 2010).

There is one twist to the otherwise straightforward application of *Pacor*'s conceivability standard. If an action is brought after the confirmation of a plan in a related bankruptcy proceeding, the post-confirmation context of the dispute alters the "related to" inquiry. Because a bankruptcy

18

court's jurisdiction wanes after the confirmation of a case, "retention of bankruptcy jurisdiction may be problematic. . . . At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred." *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 164–65 (3d Cir. 2004). Nonetheless, "courts do not usually apply *Pacor*'s 'effect on the bankruptcy estate' test so literally as to entirely bar post-confirmation bankruptcy jurisdiction." *Id.* at 165. Instead, they apply varying standards that focus on whether the action could conceivably affect the implementation of the confirmed plan. *See id.* at 166; *U.S. Tr. v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999) (applying *Pacor* to hold that a post-confirmation action for fees was related to the bankruptcy proceeding "because it directly relates to the debtor's liabilities—in fact it creates a liability—and could impact the handling and administration of the estate").

2. Application to Nuveen's Action

Nuveen's primary argument is that its recovery from Bayonne's estate was fixed by the Settlement Agreement, which was approved by the Bankruptcy Court prior to its filing of the action. Under Nuveen's theory, if it recovers from Withum and Lindabury in this action, its claim against Bayonne's estate can be assigned to them. Bayonne's estate thus would not be affected. Likewise, if Nuveen recovers from the estate first, that recovery would offset its recovery in this action, decreasing Nuveen's recovery from Withum and Lindabury and not affecting Bayonne's estate.

Nuveen dusts off the rarely cited *Ivanhoe Bldg. & Loan Assn. v. Orr*, 295 U.S. 243 (1935), which was decided under the Bankruptcy Act (the immediate predecessor to the

19

Bankruptcy Code), for the proposition that a creditor may recover from non-debtor parties without reducing the value of its claim against a bankruptcy estate. Because Nuveen stakes its argument on *Ivanhoe*, some background is required. The debtor there executed a bond to a creditor; the bond was secured by a mortgage on real estate. The creditor purchased the real estate at a foreclosure sale. Though it then had the collateral in partial payment for its debt, the creditor nonetheless filed a claim for the full amount (principal and interest) of the debtor's obligation under the bond. The Supreme Court held that the claim was valid even though the creditor held property that partially satisfied the claim. However, the Court expressly clarified that the creditor "may not collect and retain dividends which with the sum realized from the foreclosure will more than make up that amount." *Id.* at 246. It subsequently explained this ruling as settling that "in bankruptcy proceedings . . . a creditor secured by the property of others need not deduct the value of that collateral or its proceeds in proving his debt." *Reconstruction Fin. Corp. v. Denver & Rio Grande W. R.R. Co.*, 328 U.S. 495, 529 (1946).

*Ivanhoe* thus provides that a creditor may file a proof of claim for the total amount it is owed by a debtor even if it has recovered or may recover all or a portion of that amount from a non-debtor. It does not hold that the actual amount the creditor collects from the estate evades reduction by recovery from third parties. Rather, it states the exact opposite: a creditor cannot collect more, in total, than the amount it is owed. Indeed, this distinction was present in case law prior to the Supreme Court's holding in *Ivanhoe*. *See, e.g.*, *Bd. of Comm'rs v. Hurley*, 169 F. 92, 97 (8th Cir. 1909) ("[T]he holder of a claim, upon which several parties are personally liable, may prove his claim against the estates of those who become bankrupt and may at the same time pursue the others at law, and, notwithstanding partial payments after the

20

bankruptcy by other [parties] or their estates, he may recover dividends from each estate in bankruptcy upon the full amount of his claim at the time the petition in bankruptcy was filed therein *until from all sources he has received full payment of his claim, but no longer*." (emphasis added)).  The distinction also has been associated with *Ivanhoe* in subsequent decisions.  *See, e.g.*, *Feder v. John Engelhorn & Sons*, 202 F.2d 411, 412 (2d Cir. 1953) (citing *Ivanhoe* for the holding that "the creditor . . . may prove his claim in full in the bankruptcy proceeding, although of course he may not retain dividends [from the estate] which, when combined with the amount realized on the security, exceed his claim"); *In re Sacred Heart Hosp.*, 182 B.R. 413, 417 (Bankr. E.D. Pa. 1995) (citing *Ivanhoe* and *Reconstruction Finance* and noting that "a creditor can seek to prove its entire claim in the bankrupt's case notwithstanding the existence of third party collateral or guarantees of payment so long as the claimant does not seek to recover more than one full payment of its claim from whatever source"); s*ee also Nat'l Energy & Gas Transmission, Inc. v. Liberty Elec. Power, LLC (In re Nat'l Energy & Gas Transmission, Inc.)*, 492 F.3d 297, 301 (4th Cir. 2007) ("In *Ivanhoe*, the Supreme Court held that a creditor need not deduct from his *claim* in bankruptcy an amount received from a non-debtor third party in partial satisfaction of an obligation." (emphasis added)).

*Ivanhoe* is not codified explicitly in the Bankruptcy Code.  What we have are § 502,[5] which deals with the

---

[5] In pertinent part, § 502 provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects."  11 U.S.C. § 502(a).

allowance of claims, and § 506(a),[6] which concerns in part what constitutes a secured claim. Of importance is that §§ 502 and 506(a) do not change the outcome that a creditor cannot collect more in total than it is owed. For example, consistent with *Ivanhoe* and § 506(a), the Court in *In re F.W.D.C., Inc.*, 158 B.R. 523, 528 (Bankr. S.D. Fla. 1993), allowed a creditor to prove the total indebtedness against a guarantor-debtor without deducting the amount of collateral received from a third party. But it emphasized that the creditor may not be able to collect the total indebtedness from the debtor, providing this instructive example: "[I]f a creditor received collateral of a third party worth $8 million securing the third party's indebtedness of $10 million and the guarantor of this $10 million indebtedness were in bankruptcy, such creditor would be allowed to prove a claim of $10 million but would not be allowed to realize more than $2 million." *Id.*

Nuveen cannot rely on *Ivanhoe* and the Settlement Agreement to establish that the amount it will *collect* from

---

[6] In pertinent part, § 506(a) reads:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1).

Bayonne's estate is fixed regardless of its recovery in this action.[7] Yet its argument raises the issue of the timing of its recovery in this action and from Bayonne's estate. If a creditor's recovery from a non-debtor definitely will not affect the amount of its payment from a bankruptcy estate, the third-party action is not "related to" the bankruptcy proceeding. As the Fifth Circuit Court explained, this is true, for example, where a plan has been confirmed and the bankruptcy estate has been administered.

> If, at the time of [the] suit . . ., [the] bankruptcy estate had already been administered by the trustee—i.e., if all property of the estate were collected, liquidated, and the proceeds distributed to creditors—then presumably [the plaintiff's] potential damage recovery against

---

[7] Nuveen also argues that the Settlement Agreement must be read to fix the amount it will collect from Bayonne's estate because the Agreement distinguishes between claims arising within the bankruptcy proceeding ("internal" claims) and claims arising from sources collateral to the bankruptcy proceeding, such as this action ("external" claims). For internal claims, the Agreement defines the manner in which any recovery will offset a creditor's claim. Because the Agreement does not include similar express provisions regarding offsetting for external claims, Nuveen argues that to read it to allow offset of external claims inappropriately adds a term to the Agreement. However, the Agreement merely fixes Nuveen's claim against Bayonne's estate. *Ivanhoe* teaches that granting a creditor a claim against the estate does not mean that the creditor necessarily is entitled to collect from the estate that amount if that collection will allow it to receive more than it is owed. *Ivanhoe*, 295 U.S. at 246.

the [non-debtor] defendants would have been limited to the amount of the outstanding judgment (that part of the judgment not paid through bankruptcy), and no effect on the estate would have been possible.

*Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 586 n.27 (5th Cir. 1999).

Similarly, if the amount of a creditor's recovery from a non-debtor depends on its recovery from a bankruptcy estate such that the asserted losses against the non-debtor only can be calculated when the creditor's recovery from the bankruptcy estate is certain, there is no "related to" jurisdiction. *See, e.g.*, *In re J&J Towne Pharmacy, Inc.*, No. 09-17560, 2000 WL 568355 (Bankr. E.D. Pa. May 5, 2000) (concluding that there was no "related to" jurisdiction over a malpractice action that could be adjudicated only after the bankruptcy estate had been administered because the amount of the losses sought in the action depended on the actual recoveries of secured and unsecured creditors in the bankruptcy proceeding).

In contrast, courts have held that "related to" jurisdiction does exist where a creditor's recovery from a non-debtor conceivably could alter the amount of the creditor's recovery from a bankruptcy estate. For example, in advancing an argument similar to Nuveen's in *Canion*, the creditor argued that were it successful in prosecuting its action against a non-debtor, its claims against the debtor's estate would not be reduced or extinguished because the non-debtor would stand in its shoes as a judgment creditor of the debtor based on legal subrogation (thus the debtor's estate would owe the same amount regardless). The Fifth Circuit rejected this argument, noting that there was no guarantee that the non-debtor would be allowed to step into the creditor's shoes.

> Assuming that [the creditor] should successfully collect from the defendants the judgment it holds against [the debtor], and assuming that . . . legal subrogation [would not be allowed], the total amounts due on claims against [the] bankruptcy estate would be decreased. This decrease would inure to the benefit [of] all other unsecured creditors, each of whom would then share in the disbursement that would otherwise have been paid to [the creditor].

*Canion*, 196 F.3d at 586. *See also Owens-Ill., Inc. v. Rapid Am. Corp (In re Celotex Corp.)*, 124 F.3d 619, 626–27 (4th Cir. 1997) (finding "related to" jurisdiction where a creditor's claim against a non-debtor would reduce its claim in bankruptcy); *Kaonohi Ohana, Ltd. v. Sutherland (In re Sutherland)*, 873 F.2d 1302, 1306–07 (9th Cir. 1989) (finding "related to" jurisdiction over a third-party action because the specific performance remedy sought in the third-party action would reduce the amount of damages in the related breach-of-contract claim against a bankruptcy estate); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 329–30 (8th Cir. 1988) (holding that a coverage dispute between the debtor's insurance company and a creditor was "related to" the bankruptcy because a finding of coverage would reduce the claims against the estate); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 94 (5th Cir. 1987) ("Although we acknowledge the possibility that this suit may ultimately have no effect on the bankruptcy, we cannot conclude, on the facts before us, that it will have no *conceivable* effect.") (emphasis in original).

At the time Nuveen filed its complaint against Withum and Lindabury, the same loss it sought to recover in that action (primarily the unpaid principal and interest on the BAN) was included in the proof of claim filed by the master

trustee against Bayonne's estate. The loss also was included in the provisions of the Settlement Agreement whereby Nuveen's portion of the proof of claim was resolved as an unsecured claim against Bayonne's estate (which would be reduced dollar for dollar by other recoveries from the estate).

Nonetheless, Nuveen now argues that it is not seeking to recover for the same grievance in this action as the harm encompassed by the proof of claim. See Appellant's Br. 35 ("Nuveen's bankruptcy claim and its claims against [Withum and Lindabury] are not 'for the same grievance' . . . ."). This argument contradicts its statements throughout Bayonne's bankruptcy proceeding acknowledging that this action and its claim against Bayonne's estate relate to the same harm. In seeking documents related to Bayonne's pre-petition professionals, Nuveen stated that any recovery from claims brought against those professionals would decrease its claim against Bayonne's estate. *See* Application in Support of Motion for Nuveen High Yield Municipal Bond Fund to Compel the Production of Documents from the Debtor, *In re Bayonne Medical Center*, Case No. 07-15195 (Bankr. D. N.J. 2007), ECF No. 1503 at 2, 8. In this action, it asserts damages of $9.5 million, less any amounts recovered in Bayonne's bankruptcy proceeding. Moreover, before us Nuveen acknowledges that if it recovers in this action first, there will have to be an "accounting" in the bankruptcy to prevent double recovery by it. Appellant's Br. 36 n.10.

The bottom line is that if Nuveen prevails in this action, it will not be permitted to recover more in total from Withum, Lindabury, and Bayonne's estate than will make it whole as to its losses on the BAN. Though Nuveen asserts that its claim against Bayonne's estate should be assigned to Withum and Lindabury, there is no guarantee that if they moved to have the claim assigned to them, the assignment would be allowed. Indeed, it is most likely that someone

would object to the assignment on the basis that it would be inequitable for a bad acting party to be assigned all or a portion of the claim, and that the money instead should go to unpaid creditors who acted in good faith. Thus, at the time Nuveen filed its action, Bayonne's liability to it *conceivably* could have been reduced, having a direct, indeed substantial, effect on the pool of assets available for distribution to Bayonne's creditors. The *Pacor* inquiry thus leads to the conclusion that Nuveen's action is "related to" Bayonne's bankruptcy proceeding.[8]

---

[8] Similarly focusing on Withum and Lindabury, Nuveen argues that if it is successful in this action, Bayonne's estate will be affected if Withum and Lindabury file another, separate suit against Bayonne's officers and directors based on their potential indemnification claims under Bayonne's directors and officers liability insurance policy (the "D&O Policy"), which is property of Bayonne's estate. *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006) ("It has long been the rule in this Circuit that insurance policies are considered part of the property of a bankruptcy estate."). These indemnification claims include common law indemnification claims, which are inchoate—that is, they can be asserted only when there is a determination of Withum's and Lindabury's liability to Nuveen in this action. *See Bd. of Educ. of Florham Park v. Utica Mut. Ins. Co.*, 798 A.2d 605, 610 (N.J. 2002); *W.R. Grace*, 591 F.3d at 171 ("[A]n inchoate claim of common law indemnity is not, in and of itself, enough to establish the bankruptcy court's subject matter jurisdiction."). Because Withum and Lindabury agreed to dismiss without prejudice their third-party complaints against certain of Bayonne's officers, they will need to file another suit if they want to assert indemnification against them (and,

In a final attempt to defeat this conclusion, Nuveen argues that we should deviate from the hornbook rule that jurisdiction is assessed at the time of the filing of a complaint and assess jurisdiction now because significant intervening events support looking at post-filing events in reviewing "related to" jurisdiction. Chief among these events is that the Plan has been confirmed and Bayonne's bankruptcy proceeding is winding down. With this argument, Nuveen in

---

we presume, Bayonne's directors). Only after the filing of such a suit will Bayonne's estate be implicated through the D&O Policy. *Compare Pacor*, 743 F.2d at 995 ("The fact remains that any judgment received by the plaintiff . . . could not itself result in even a contingent claim against [the debtor], since [the defendant] would still be obliged to bring an entirely separate proceeding to receive indemnification."), *and W.R. Grace*, 591 F.3d at 173 ("Here, we are presented with state court actions that have only the potential to give rise to a separate lawsuit seeking indemnification from the debtor."), *with Stoe v. Flaherty*, 436 F.3d 209, 217–19 (3d Cir. 2006) (finding "related to" jurisdiction where there was an automatic right to indemnification).

However, because Nuveen asserted a claim, as established by the Settlement Agreement, against Bayonne's estate, the estate already is implicated. Even though Withum and Lindabury may bring a third-party action against Bayonne's officers depending on the outcome of this action, and the officers in turn may seek indemnification from Bayonne (thereby affecting Bayonne's bankruptcy proceeding through another suit), the outcome of this action *conceivably* will resolve a portion of Bayonne's possible liability. This is sufficient to establish "related to" jurisdiction.

effect requests that we apply a post-confirmation gloss on the *Pacor* inquiry discussed above.

Nuveen offers no case law to support its contention that we should adopt a new rule for determining "related to" jurisdiction in situations in which a plan is confirmed after the filing of the complaint or in which a bankruptcy estate is almost fully administered at the time the jurisdictional analysis is undertaken. Indeed, had Nuveen initially filed the complaint in a New Jersey state court, as it now asserts it should have, Withum and Lindabury could have moved to transfer the action to the District Court based on "related to" jurisdiction immediately. Under this scenario, when the Court assessed its jurisdiction, the Plan either would not have been confirmed or would have been confirmed only recently. There would be few (if any) intervening events to consider, and the Court would not question that "related to" jurisdiction should be assessed as of the date Nuveen filed the complaint. Only because "related to" jurisdiction was raised after Nuveen's reversal of its position regarding diversity jurisdiction is Nuveen able to create an argument about intervening events.

Supreme Court precedent is clear that the date of filing is the date when subject matter jurisdiction is assessed. *See, e.g.*, *Grupo Dataflux*, 541 U.S. at 582; *Dole Food*, 538 U.S. at 478. The unique procedural posture of this action should not affect that outcome. Moreover, Bayonne's bankruptcy proceeding, though nearing closure, remains open. And even if it is closed, it can be reopened by a motion. *See* 11 U.S.C. § 350(b) ("A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."); Fed. R. Bank. P. 5010 ("A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code."). As subject matter jurisdiction should be assessed at the time the

29

complaint was filed, *Pacor*'s analysis counsels that Nuveen's action is "related to" Bayonne's bankruptcy proceeding. We thus affirm the District Court's holding that it has jurisdiction under 28 U.S.C. § 1334(b).[9]

## IV. Choice of Law and the AOM Statute

Nuveen raises two choice-of-law arguments regarding the application of the AOM Statute and certain protections abating its harsh consequences in federal court. First, it cites *Chamberlain v. Giampapa*, 210 F.3d 154, 161 (3d Cir. 2000), in which we held that the Statute was "substantive state law that must be applied by federal courts sitting in diversity" because Federal Rules of Civil Procedure 8 and 9 did not "collide" with the Statute under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny. Nuveen argues (as significantly developed by the *amicus curiae* brief filed by Professor Geoffrey C. Hazard, Jr.) that this holding has been overruled impliedly by the combination of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), with *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010) (plurality opinion). The assertion is that the pleading standard established by *Twombly* and *Iqbal*, when considered against the Statute under the *Shady Grove* analysis, makes the Statute procedurally in conflict with Rule 8 such that it no longer can be applied by a federal court.

On the flip side, Nuveen and *amicus* also argue that the two protections the New Jersey Supreme Court has

---

[9] Because the District Court held that it had jurisdiction over this action under 28 U.S.C. § 1334(b), it did not address whether it also had jurisdiction under 28 U.S.C. § 1332. We likewise need not address jurisdiction under § 1332.

established to dull the severe consequences of the failure to file a timely affidavit of merit—the addition to New Jersey's Civil Case Information Sheet referencing the AOM Statute and the accelerated case management conference—are substantive requirements of the Statute that must be applied in federal court.[10]

A. Waiver

Before considering these two issues, we confront Withum's and Lindabury's contention that Nuveen failed to advance arguments about them before the District Court. Nuveen counters that it raised the distinction between federal and state law before the Court, specifically citing *Burns v. Belafsky*, 766 A.2d 1095 (N.J. 1999), and *Ferreira v. Rancocas Orthopedic Assocs.*, 836 A.2d 779 (N.J. 2003), the cases in which the New Jersey Supreme Court established the two protections. Though it did not cite *Erie* or *Shady Grove*, Nuveen asserts that the implications of its argument were

---

[10] *Amicus* further argues that the AOM Statute is an affirmative defense under Federal Rule of Civil Procedure 8(c), and Withum's and Lindabury's failure to assert it as an affirmative defense in their responses to the complaint constitutes waiver. An *amicus* cannot expand the scope of an appeal with issues not presented by the parties on appeal. *See N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 383 n.2 (3d Cir. 2012) (rejecting an attempt by an *amicus* to raise an issue not addressed by the parties); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 445 (2d Cir. 2001) ("Although an *amicus* brief can be helpful in elaborating issues properly presented by the parties, it is normally not a method for injecting new issues into an appeal, at least in cases where the parties are competently represented by counsel."). We thus do not address this argument.

clear and that its citation of *Erie* now is a natural extension and refinement of its argument below. An argument is not waived if it "is inherent in the parties' positions throughout [the] case." *Huber v. Taylor*, 469 F.3d 67, 75 (3d Cir. 2006). However, the argument must do more than "emanat[e] from the ethers of briefs filed in the district court." *Brennan v. Norton*, 350 F.3d 399, 418 (3d Cir. 2003). The party must "present[] the argument with sufficient specificity to alert the district court." *Id.* (quoting *Keenan v. City of Philadelphia*, 983 F.2d 459, 471 (3d Cir. 1993)).

Before the District Court, Nuveen argued (without reference to *Erie*) that the absence in federal court of (1) a New Jersey Civil Case Information Sheet referring to the AOM Statute and (2) an accelerated case management conference created "extraordinary circumstances" under New Jersey law that excused any failure to file a timely AOM, and thus required its complaint to be dismissed without prejudice. "Extraordinary circumstance" is one of four limited exceptions that the Supreme Court of New Jersey has recognized to the affidavit requirement under the AOM Statute. *See Ferreria*, 836 A.2d at 783. This is the argument that Nuveen advanced to the District Court with its citation of *Burns* and *Ferreira*, and we address it below. *See infra* Part V.B. Before doing so, however, we consider two choice-of-law issues (*see infra* Part IV. B-C) that were not presented to the District Court and are distinct from Nuveen's contentions regarding the exceptions to the Statute's requirements. Merely citing *Burns* and *Ferreira* in its argument regarding extraordinary circumstances was not sufficient to alert the District Court that it also was raising these choice-of-law issues.

Nonetheless, we have not adopted a consistent rule regarding whether choice-of-law issues can be waived. *Huber*, 469 F.3d at 75 n.12. In *Parkway Baking Co., Inc. v.*

*Freihofer Baking Co.*, 255 F.2d 641, 646 (3d Cir. 1958), and *United States v. Certain Parcels of Land*, 144 F.2d 626, 630 (3d Cir. 1944), we held that choice-of-law questions are not waivable. We noted in *Certain Parcels* that "[t]he appropriate law must be applied in each case and upon a failure to do so appellate courts should remand the cause to the trial court to afford it opportunity to apply the appropriate law, even if the question was not raised in the court below." 144 F.2d at 630. In *Neely v. Club Med Mgmt. Servs.*, 63 F.3d 166, 180 n.10 (3d Cir. 1995) (*en banc*), however, we deemed the choice-of-law question waived. *Neely*, however, did not overrule *Parkway Baking* specifically or even address the case.

Moreover, we may review waived issues at our discretion. *See Wright v. Owens Corning*, 679 F.3d 101, 105 (3d Cir. 2012). We have exercised our discretion in exceptional circumstances, such as when the "public interest . . . so warrants," and particularly when issues are not fact dependent. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 834–35 (3d Cir. 2011) (quoting *Rogers v. Larson*, 563 F.2d 617, 620 n.4 (3d Cir. 1977)); *see also Wright*, 679 F.3d at 105.

Nuveen's choice-of-law arguments involve issues purely of law, and given that they involve choice of law, the public interest weighs toward our consideration of them. This is an appropriate circumstance for us to do so.

B.    *Shady Grove* and the AOM Statute as a Pleading Requirement

Our last encounter with choice of law and the AOM Statute was in *Chamberlain*. As noted, under an *Erie* analysis we concluded that the Statute is substantive state law. *Erie* provides that a federal court sitting in diversity must apply

33

substantive state law and federal procedural law.[11]  304 U.S. at 78.  Under *Erie*, a court assesses the substantive/procedural dichotomy with the objective that "the outcome of the litigation in the federal court [will] be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."  *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945).  This "outcome determinative test" focuses on the "twin aims" of discouraging forum shopping and avoiding "the inequitable administration of the laws."  *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).  Consideration of the "twin aims" should produce a decision favoring application of state law only if one of the aims is furthered:

> [T]he importance of a state rule is indeed relevant, but only in the context of asking whether application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, *or* whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that

---

[11] Where a claim that derives from state law is before a federal court based on "related to" jurisdiction, that court also must apply state law.  *See, e.g.*, *Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*, 673 F.3d 180, 187 (2d Cir. 2012) ("28 U.S.C. § 1334(b) vests the district courts with original jurisdiction over civil proceedings 'arising under,' 'arising in,' or 'related to' cases under the Bankruptcy Code.  Such jurisdiction extends not only to questions of federal law, but also to many state law disputes.  *Erie* made clear that state law provides the rules of decision for the merits of state law claims in bankruptcy court.").

failure to enforce it would be likely to cause a plaintiff to choose the federal court.

*Id.* at 468 n.9 (emphasis added).

There are two caveats to the *Erie* analysis. First, notwithstanding that its application should further the "twin aims," if a "strong countervailing federal interest" dictates application of a federal rule, the federal rule controls. *Chamberlain*, 210 F.3d at 159. Second, the *Erie* rule cannot void a Federal Rule of Civil Procedure "so long as the federal rule is authorized by the Rules Enabling Act and consistent with the Constitution."[12] *Id.* Prior to *Shady Grove*, to determine whether a state law voided a Rule, we considered whether the Rule "directly collided" with the state law. *Id.* (citing *Hanna*, 380 U.S. at 470–74). Absent a direct conflict, we followed the *Erie* dichotomy. *Id.*

Proceeding under this analysis in *Chamberlain*, we found "no direct conflict" between Federal Rules 8 and 9 and the AOM Statute:

> The affidavit of merit statute has no effect on what is included in the pleadings of a case or the specificity thereof. The required affidavit is not a pleading, is not filed until after the pleadings are closed, and does not contain a statement of the factual basis for the claim. Its purpose is not to give notice of the plaintiff's claim, but rather to assure that malpractice claims for which there is no expert support will be terminated at an early stage in the

---

[12] Rule 8 is within the scope of the Rules Enabling Act and consistent with the Constitution. *See Chamberlain*, 210 F.3d at 160.

proceedings. This state policy can be effectuated without compromising any of the policy choices reflected in Federal Rules 8 and 9.

*Id.* at 160. We also addressed the Statute's provision that failure to file an affidavit is "deemed a failure" to state a cause of action. N.J. Stat. Ann. § 2A:53A-29. "We read the 'deeming' language to be no more than the New Jersey legislature's way of saying that the consequences of a failure to file shall be the same as those of a failure to state a claim." *Chamberlain*, 210 F.3d at 160–61. Failure to file the required affidavit thus does not render pleadings insufficient. *Id.* at 160.

Nuveen and *amicus* counsel question the continued validity of our conclusion that the AOM Statute does not "collide" with Rule 8 in light of *Twombly*, *Iqbal*, and *Shady Grove*. *Twombly* and *Iqbal* established the pleading standard under Rule 8 that a party must demonstrate the plausibility, as opposed to conceivability, of its causes of action in the complaint. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230–35 (3d Cir. 2008) (discussing *Twombly* and *Iqbal*).

*Shady Grove* clarified the second caveat to the *Erie* analysis. In determining that certification of a class action under Rule 23 alleging violations of New York law was proper even though New York law prohibited the action from proceeding as a class action, a plurality of the Court stated that the "collision" inquiry does not depend on "the substantive or procedural nature or purpose of the affected state law," but rather "substantive or procedural nature of the Federal Rule." *Shady Grove*, 130 S. Ct. at 1444; *see Knepper v. Rite Aid Corp.*, 675 F.3d 249, 264–65 (3d Cir. 2012) (discussing *Shady Grove*).

However, as we held in *Chamberlain*, the affidavit of merit is not a pleading requirement. It is not part of the complaint, nor does it need to be filed with the complaint. Rather, the affidavit must be filed within 60, or possibly 120 days, after the defendant files its answer. *See* N.J. Stat. Ann. § 2A:53A-27. The requirement exists to provide expert verification of the merits of the assertions in the complaint so that "malpractice claims for which there is no expert support will be terminated *at an early stage in the proceedings*." *Chamberlain*, 210 F.3d at 160 (emphasis added). Our holding in *Chamberlain* was premised on the temporal separation of the filing of the complaint and the affidavit. The AOM Statute "has no effect on what is included in the pleadings of a case or the specificity thereof." *Id.* Rule 8 does not collide with the Statute, as it is not even implicated by the Statute.

*Twombly*, *Iqbal*, and *Shady Grove* do not alter this conclusion.[13] *See also Liggon-Reading v. Estate of*

---

[13] That the affidavit is not a pleading requirement counsels that a defendant seeking to "dismiss" an action based on the plaintiff's failure to file a timely affidavit should file a motion for summary judgment under Rule 56, and not a motion to dismiss for failure to state a claim under Rule 12(b)(6). Though the AOM Statute directs courts to dismiss actions in which a timely affidavit has not been filed for "failure to state a claim," because the affidavit is not a pleading requirement, this language merely provides that the consequences of not filing a timely affidavit are the same as failing to state a claim. *Chamberlain*, 210 F.3d at 610. Indeed, because the affidavit is not part of the pleadings, dismissing an action based on the lack of an affidavit necessarily seems to involve matters outside the pleadings, which would require a court to consider a motion to dismiss for failure to state a claim as a

37

*Sugarmann*, 659 F.3d 258, 262–63 (3d Cir. 2011) (concluding that Pennsylvania's similar requirement that a certificate of merit be filed in malpractice cases is substantive state law that federal courts must apply under *Erie*). The AOM Statute can be applied by a federal court without voiding any Federal Rules.[14]

C. New Jersey Civil Information Cover Sheet and Expedited Case Management Conference as Substantive State Law

Having concluded that an action subject to the AOM Statute can be maintained in federal court, we proceed to the *Erie* analysis and consider whether the District Court should have afforded Nuveen the two protections the New Jersey Supreme Court has established to cut back the severe consequences of the failure to file a timely affidavit of merit—the addition to New Jersey's Civil Case Information Sheet referencing the Statute and the accelerated case management conference (often called the "*Ferreira* conference," *see Ferreira*, 836 A.2d at 785). Nuveen and the *amicus* characterize these protections as part of a three-step process that includes the Statute, the Civil Case Information Sheet, and the accelerated conference. According to them, though the protections are procedural, their objective is substantive and thus they are outcome determinative.

_____

motion for summary judgment, as provided by Rule 12(d). *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

[14] There also is no strong countervailing federal interest that precludes application of the AOM Statute. *See Chamberlain*, 210 F.3d at 161.

Turning to the information sheet first, the use of a particular form generally is a procedure of a state court, and the information provided to parties by a state court via its forms usually will not result in forum shopping. Here, a plaintiff either will file in state court and be reminded of the affidavit requirement via the Civil Case Information Sheet, or will file in federal court and not be reminded of the requirement. Moreover, plaintiffs (and their attorneys) are required to know the law.[15] They should not need to be reminded of the affidavit requirement on an information sheet; thus the lack of a reminder does not result in inequitable administration of the AOM Statute. In addition, a defendant has no incentive to remove a case from state to federal court based on the reminder of the affidavit requirement on the Civil Case Information Sheet because the burden is on the plaintiff to know the requirements for initiation of an action. At bottom, the requirement that the Civil Case Information Sheet reference the Statute in New Jersey state actions is not a substantive requirement.

The same is true for the *Ferreira* conference. Though the New Jersey Supreme Court requires the conference, *Ferreira*, 836 A.2d at 785, it has held that its absence will not prevent an action from being dismissed based on the failure to file a timely affidavit. *See Paragon Contrs., Inc. v. Peachtree Condo. Ass'n*, 997 A.2d 982, 987 (N.J. 2010) ("[O]ur creation of a tickler system to remind attorneys and their clients about critical filing dates plainly cannot trump the statute. In other words, the absence of [the accelerated] conference cannot toll the legislatively prescribed time frames."). The timing of a conference that will not affect the outcome of a proceeding is

---

[15] The problem here is that both firms acting as Nuveen's counsel were not from New Jersey. This underscores the need to engage local counsel to avoid state-specific pitfalls.

39

unlikely to promote forum shopping and will not result in an inequitable administration of the Statute. Moreover, a defendant has no incentive to remove a case from state to federal court solely to prevent the accelerated conference from being held because the plaintiff already will have been reminded of the affidavit requirement when it filed the Civil Case Information Sheet along with its complaint.

Neither protection furthers the "twin aims" of discouraging forum shopping and preventing the inequitable administration of state laws. The protections are procedural. The District Court thus was not required to provide Nuveen with a reminder of the affidavit requirement on the cover sheet that Nuveen filed along with its complaint or to hold an accelerated conference. The Court acted appropriately.

## V. The AOM Statute and Dismissal of the Action

Having cleared jurisdictional and choice-of-law hurdles, we finally arrive at the core of Nuveen's appeal—whether, based on New Jersey state law, it can escape the harsh consequences of its counsel's failure to file timely affidavits of merit as required by the AOM Statute. As it did before the District Court, Nuveen argues that the Statute does not apply to all or a portion of the complaint and that, if it does apply, its counsel's mistake can be excused based on its substantial compliance with the Statute or extraordinary circumstances.

To review, the AOM Statute requires a plaintiff in a malpractice action against a licensed professional seeking "damages for personal injuries, wrongful death or property damage" to file an affidavit of merit from an appropriate licensed professional within 60 days of the defendant filing its answer. N.J. Stat. Ann. § 2A:53A-27. Upon a showing of good cause, the court may extend this deadline an additional

60 days. *Id.* Absent the plaintiff's showing of one of four limited exceptions, if the affidavit of merit is not filed within 60 (or 120) days, the failure to file requires dismissal of the action with prejudice. *Id.* § 2A:53A-29. The four limited exceptions are: (i) a statutory exception regarding lack of information; (ii) a "common knowledge" exception; (iii) substantial compliance with the affidavit-of-merit requirement; or (iv) "extraordinary circumstances" that warrant equitable relief. *See id.* § 2A:53A-28; *Ferreira v. Rancocas Orthopedic Assocs.*, 836 A.2d 779, 782–83 (N.J. 2003); *Hubbard v. Reed*, 774 A.2d 495 (N.J. 2001); *Cornblatt v. Barow*, 708 A.2d 401, 411–12 (N.J. 1996).

We go out of turn, and consider first the arguments that, if the AOM Statute applies, Nuveen's failure to file timely affidavits should be excused based on either its substantial compliance with the Statute or extraordinary circumstances. Our answer in each instance is no. We conclude with whether the Statute applies to all or but a portion of this action, as it is there that we reserve ruling pending the certification of two questions to the New Jersey Supreme Court.

A. Substantial Compliance

The New Jersey Supreme Court has established a five-part test to determine whether the equitable doctrine of substantial compliance excuses noncompliance with the AOM Statute:

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim[;] and (5) a

41

reasonable explanation why there was not a strict compliance with the statute.

*Galik v. Clara Maass Med. Ctr.*, 771 A.2d 1141, 1149 (N.J. 2001) (quoting *Bernstein v. Bd. of Trs. of Teachers' Pension & Annuity Fund*, 376 A.2d 563, 566 (N.J. Super. Ct. App. Div. 1977)). "Satisfying those elements guarantees that the underlying purpose of the statute is met and that no prejudice is visited on the opposing party." *Id.* Though the New Jersey Supreme Court has noted that establishing the elements of substantial compliance "is a heavy burden," *id.* at 1152, it also has stated that *Cornblatt*, in which it established that the doctrine applies to the Statute, is not a "narrow authorization of substantial compliance in the affidavit of merit setting." *Id.* at 1150. Overall, the analysis is fact sensitive, "involving the assessment of all of the idiosyncratic details of a case to determine whether 'reasonable effectuation of the statute's purpose' has occurred." *Id.* at 1151 (quoting *Cornblatt*, 708 A.2d at 401).

## 1. Lack of Prejudice to Withum and Lindabury

The District Court held that Withum and Lindabury suffered prejudice by filing and defending their motions to dismiss. Nuveen argues that its noncompliance did not cause them prejudice because the complaint was sufficiently detailed to provide them with reasonable notice of its claims. Thus, it contends, Withum and Lindabury were prepared for the suit after receiving the complaint. In addition, Nuveen asserts that Withum and Lindabury did not incur *undue* additional defense costs in filing and litigating the motions to dismiss the complaint. *See Fink v. Thompson*, 772 A.2d 386, 394 (N.J. 2001) (holding that an affidavit that inadvertently excluded the name of a defendant-professional involved in the malpractice action did not prejudice the defendant-

professional, and noting that "permitting plaintiff's case to proceed would not result in undue additional defense costs").

We agree that the incurrence of additional costs to bring a motion to dismiss based on the failure to file the requisite affidavit is not sufficient to cause prejudice to a defendant. If the costs of filing and defending the motion to dismiss were sufficiently prejudicial to preclude a showing of substantial compliance, few plaintiffs could prove substantial compliance. Yet courts have found substantial compliance in a variety of circumstances. *See, e.g.*, *Burns v. Belafsky*, 766 A.2d 1095, 1101 (N.J. 1999) (holding that failure to timely file affidavit was not prejudicial because it was "simply too early in the litigation for that claim to be credible"); *Mayfield v. Cmty. Med. Assocs., P.A.*, 762 A.2d 237, 243 (N.J. Super. Ct. App. Div. 2000) (stating that, where the affidavit was timely filed but served late, "there has been no showing of prejudice to defendants that would outweigh the strong preference for adjudication on the merits rather than final disposition for procedural reasons").

Nuveen provided Withum and Lindabury with a complaint that was detailed enough to place them on notice of the asserted claims without the affidavits. The only apparent prejudice they suffered was the cost of filing and defending the motions to dismiss. This is not sufficient prejudice to preclude a finding of substantial compliance. Nonetheless, Nuveen still must demonstrate the other four factors.

2. "Series of Steps"

Nuveen argues that, in holding that it did not take a "series of steps" necessary for substantial compliance, the District Court overlooked its actions to verify the merit of its complaint. Nuveen highlights that it conducted an 18-month-long investigation to support its allegations, which allowed it

43

to submit a detailed complaint. During this extensive investigation, it consulted two experts who later submitted affidavits, one of whom provided it with a 16-page report before it filed the complaint. It also notes that it provided Withum and Lindabury the affidavits one day after they filed their motions to dismiss.

Though Nuveen may have researched its complaint and scrambled to correct its mistake regarding the affidavits, its failure to take some action to comply with the affidavit requirement before the AOM Statute's deadline expired appears fatal here. A review of New Jersey Supreme Court cases discussing substantial compliance reveals that the "series of steps" element requires some effort by the plaintiff to provide the defendant with a statement of a professional discussing the merits of the action by the expiration of the 120-day period. *See, e.g.*, *Ferreira*, 836 A.2d at 784 (declining to find substantial compliance where "[p]laintiff's counsel did not, within the statutory time frame, take steps to forward the affidavit to opposing counsel"); *Palanque v. Lambert-Woolley*, 774 A.2d 501, 506 (N.J. 2001) ("In both *Galik* and *Fink*, the plaintiffs took a series of steps that notified the defendants about the merits of the malpractice claims filed against them. Here, no such action was taken. Plaintiff obtained an expert report but did not provide the report or an affidavit to defendant. The action taken by plaintiff falls short of meeting the elements of substantial compliance."); *Fink*, 772 A.2d at 386 (finding a "series of steps" where plaintiff served a timely affidavit that did not identify one of the defendant-professionals, but identified "unknown" professionals, and also provided a pre-suit expert report in which the unidentified defendant-professional was mentioned by name); *Galik*, 771 A.2d at 1151 (finding a "series of steps" where "[p]laintiff retained an expert before filing suit, forwarded the medical records to the expert, obtained both an initial and a supplementary expert report,

44

and sent both to defendants' carriers who attempted to settle the case on defendants' behalf"); *Burns*, 766 A.2d at 1101 (finding substantial compliance where affidavit was served after 60 days, but before 120 days, after the answer, and only after defendants filed motions to dismiss); *Cornblatt*, 708 A.2d at 411–12 (finding substantial compliance where plaintiff served a certification instead of an affidavit).

These decisions comport with the AOM Statute's goal of weeding out frivolous lawsuits by providing defendants with independent opinions of the actions. *See Chamberlain*, 210 F.3d at 610. As long as a defendant receives timely (that is, within the time allowed by the Statute) an opinion in the form of a document or combination of documents authored by a non-party discussing the merits of the action as to each defendant, the plaintiff will have fulfilled the "series of steps" element of substantial compliance.

Nuveen communicated with two professionals before it filed the complaint. One professional provided it with a report; the other merely discussed the potential action on the telephone. Nuveen did not provide the report to Withum and Lindabury, and did not file it with the complaint. It also did not obtain the affidavits until more than 120 days after Withum and Lindabury filed their answers. The result is that it did not timely provide Withum and Lindabury with independent verification that the allegations in the complaint were sufficient to state causes of action for malpractice. Nuveen's failure to engage in a "series of steps" undermines its argument that it substantially complied with the Statute.

### 3. Remaining Factors

In arguing that it generally complied with the purposes of the AOM Statute, Nuveen again references the detailed complaint and its provision of the affidavits one day after

45

Withum and Lindabury filed their motions to dismiss. However, the purpose of the Statute is to identify frivolous malpractice actions by requiring independent verification of the validity of claims. Regardless how detailed a complaint is, a pleading is self-serving and cannot be substituted for this independent verification. In not attempting to provide independent verification of the merit of the complaint until more than 140 days after Withum and Lindabury filed their answers, Nuveen did not comply with the purposes of the Statute.

As to the fourth factor, we agree with the District Court that Nuveen's detailed complaint provided Withum and Lindabury with reasonable notice of Nuveen's claims. Reasonable notice refers to whether the defendant can understand the basis of the malpractice suit such that it can begin defending itself. If a complaint is conclusive or does not specify particular professionals, an affidavit will be necessary to supplement the complaint for the defendant to be on reasonable notice of the asserted claims. *See, e.g.*, *Kindig v. Gooberman*, 149 F. Supp. 2d 159, 166 (D.N.J. 2001) (noting that the filing of complaint first notified the defendants). But if a complaint is detailed, as here, it should provide the defendant with reasonable notice of the claims.

Finally, Nuveen provides one reason for its lack of strict compliance: inadvertence by its counsel. However, New Jersey state courts have rejected attorney inadvertence alone as a sufficient ground for a party's failure to comply with the AOM Statute. *See, e.g.*, *Paragon Contrs., Inc. v. Peachtree Condo. Ass'n*, 997 A.2d 982, 986 (N.J. 2010) ("[A]n attorney's inadvertence in failing to timely file an affidavit will generally result in dismissal with prejudice."). Nuveen's counsel's failure to exercise sufficient diligence in obtaining and serving affidavits is not a reasonable explanation for Nuveen's noncompliance with the Statute.

46

\*   \*   \*   \*   \*

Though Nuveen filed a detailed complaint that put Withum and Lindabury on notice of its claims such that they did not incur undue additional expenses in defending the action, it failed to provide independent verification of the merits of the claims in its complaint. Absent that independent verification, under the facts before us we (like the District Court) cannot hold that Nuveen substantially complied with the Statute.

B. Extraordinary Circumstances

Where a plaintiff cannot establish substantial compliance with the AOM Statute, the New Jersey Supreme Court has held that dismissal of the plaintiff's complaint should be with prejudice in all but extraordinary circumstances. *See Ferreira*, 836 A.2d at 783. A finding of extraordinary circumstances results in a dismissal of the complaint without prejudice. *See Paragon*, 997 A.2d at 986. Like substantial compliance, the extraordinary circumstances analysis is fact-specific. *See Hyman Zamft & Manard, L.L.C. v. Cornell*, 707 A.2d 1068, 1071 (N.J. Super. Ct. App. Div. 1998). Nuveen asserts that extraordinary circumstances exist here because the District Court did not afford it the two protections available in New Jersey state court (which were the subject of the *Erie* analysis above), and because Withum and Lindabury could have alerted it to its noncompliance with the Statute.

We have identified no federal court decision finding extraordinary circumstances based even partially on New Jersey's Civil Case Information Sheet. Rather, federal courts focus on more typical "extraordinary circumstances," stating that "[c]arelessness, lack of circumspection, or lack of diligence on the part of counsel are not extraordinary

47

circumstances which will excuse missing a filing deadline." *Cobalt Multifamily Investors I, LLC v. Shapiro*, No. 06-6468, 2012 U.S. Dist. LEXIS 30954, at *51 (S.D.N.Y. Mar. 8, 2012) (quoting *Hyman Zamft & Manard*, 707 A.2d at 1071) (applying the AOM Statute). The notice on the information sheet may provide plaintiffs with a useful reminder of the Statute, but plaintiffs and their counsel are responsible for knowing that an affidavit must accompany a malpractice claim under New Jersey law.

And, ironically, Nuveen chose to file in federal, rather than state, court. That choice by Nuveen alone, whereby it did not receive notice of the Statute on the federal form it was required to file along with its complaint, is not a basis for a finding of extraordinary circumstances.

The New Jersey Supreme Court established the accelerated "*Ferreira* conference" in 2003. *See Ferreira*, 836 A.2d at 785. In an opinion issued the same day as *Ferreira*, it discussed the conference as if it were mandatory: "Our decision in *Ferreira* requires that an accelerated case management conference be held within ninety days of the service of an answer in all malpractice actions." *Knorr v. Smeal*, 836 A.2d 794, 801 (N.J. 2003). After *Ferreira* and *Knorr*, New Jersey intermediate state courts issued conflicting decisions regarding the effect of not holding a conference on whether an action should be dismissed with prejudice for failure to file a timely affidavit. *See Paragon*, 997 A.2d at 987. To clarify, the New Jersey Supreme Court recently held that the absence of this conference will not preclude dismissal. *Id.* at 987–88.

In so clarifying, in *Paragon* it held that the confusion among New Jersey state courts "counsels lenience *in this case*." *Id.* at 987 (emphasis added). The complaint in that case was captioned as a breach-of-contract claim, and the

plaintiff's counsel filed a certification that a legal assistant in its office had been told by the state court that an affidavit would need to be filed prior to an unscheduled case management conference, and even if the affidavit was not filed before the conference, it could be filed later with the consent of the parties. *See Paragon Contractors, Inc. v. Peachtree Condominium Ass'n,* 968 A.2d 752, 756–57 (N.J. Super Ct. App. Div. 2009), *rev'd*, 997 A.2d at 982. The New Jersey Supreme Court emphasized that its finding of extraordinary circumstances arose from the confusion regarding the *Ferreira* conference. *Paragon*, 997 A.2d at 987.

Here, Nuveen filed the complaint in December 2008, after *Ferreira* was decided, but before *Paragon* clarified it. Nuveen thus plausibly can assert that, at the time it filed the complaint, it was unclear whether the *Ferreira* conference was mandatory such that failure to hold it possibly could constitute an extraordinary circumstance. However, "extraordinary circumstances" requires a fact-specific analysis. The "confusion" in *Paragon* that led to the finding of extraordinary circumstances was created in large part by the state court and the initial captioning of the case as a breach-of-contract claim. Moreover, in *Paragon* the plaintiff's attorney inquired about the affidavit, demonstrating that the plaintiff tried to comply with the affidavit requirement. In contrast, Nuveen (and its counsel) appear not to have attempted to determine if and when an affidavit was necessary. Apparently Nuveen's counsel simply was unaware of the requirement. And, continuing with the theme already noted, "attorney inadvertence is not a circumstance entitling plaintiff to a remedy of dismissal of a complaint without prejudice." *Ferreira*, 836 A.2d at 784; *see also Palanque*, 774 A.2d at 505 ("[A]ttorney inadvertence will not support the extraordinary circumstances set forth in *Cornblatt*."). Lack of the accelerated conference is not a

49

basis for a finding of extraordinary circumstances in this instance.

Finally, Withum and Lindabury had no duty to notify Nuveen of the affidavit requirement. *Ferreira* establishes that the state court must inquire about the status of the affidavit if it has not been filed, not that the defendant must notify the plaintiff of the requirement. *See Ferreira*, 836 A.2d at 785 ("At the conference, the court will address all discovery issues, including whether an affidavit of merit has been served on defendant. If an affidavit has been served, defendant will be required to advise the court whether he has any objections to the adequacy of the affidavit."). In addition, though defendants cannot sleep on their rights, Withum and Lindabury acted appropriately in waiting approximately three weeks after the 120-day period in which Nuveen had to file the affidavits expired to file their motions to dismiss. *See, e.g., Knorr*, 836 A.2d at 801 (holding that equitable estoppel and laches barred the granting of motion to dismiss for failure to file a timely affidavit where the defendant waited 14 months to file the motion, during which time the parties engaged in extensive discovery); *Stoecker v. Echevarria*, 975 A.2d 975, 985 (N.J. Super. Ct. App. Div. 2009) (finding reliance on *Knorr* misplaced when the motion to dismiss for failure to file a timely affidavit was filed two and a half months after the affidavit was due). Moreover, Withum and Lindabury should not be penalized for knowing the law— including that they should wait until after the expiration of the extended 120-day period (even if Nuveen had not requested an extension) to preclude an argument regarding substantial compliance—and using it to their advantage.

If Nuveen's counsel had been diligent, it would not have needed a reminder on an information sheet, at a case management conference, or from Withum or Lindabury that it had an obligation to serve affidavits of merit. Under New

50

Jersey law, attorney inadvertence alone cannot support a claim of extraordinary circumstances. *See, e.g., Ferreira*, 836 A.2d at 784; *Palanque*, 774 A.2d at 505. We agree with the District Court that no extraordinary circumstances exist here. Thus, unless the action is not subject to the AOM Statute, we must uphold the District Court's dismissal of that action with prejudice.

C. The AOM Statute's Application to Nuveen's Action

Nuveen argues that the AOM Statute does not apply to its entire action because it is not seeking recovery for "property damage" under the Statute, and alternatively that the Statute does not apply to the non-negligence and non-malpractice claims it asserts against Withum. We consider each argument in turn.

1. What Damages Are Covered by the AOM Statute?

In primary support of the argument that it is not seeking recovery for "property damage" under the AOM Statute, Nuveen cites *Couri v. Gardner*, 801 A.2d 1134 (N.J. 2002). In that case, the plaintiff retained a licensed psychiatrist as a potential expert witness in connection with his divorce proceeding. After the psychiatrist disclosed his preliminary findings without the plaintiff's permission, the plaintiff filed a breach-of-contract action alleging that the psychiatrist was retained to prepare a report only for the plaintiff. The New Jersey Supreme Court analyzed whether the action was subject to the AOM Statute based on three elements:

> (1) whether the action is for "damages for personal injuries, wrongful death or property damage" (nature of injury); (2) whether the action is for "malpractice or negligence" (cause

51

of action); and (3) whether the "care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint [] fell outside acceptable professional or occupational standards or treatment practices" (standard of care).

*Id.* at 1137. It considered these elements in order. Addressing the "nature of injury" element first, it emphasized that the Statute "covers actions 'for damages for personal injuries, wrongful death or property damage.'" *Id.* at 1138 (quoting N.J. Stat. Ann. § 2A:53A-27). It noted that though the plaintiff requested "compensatory and punitive damages" in his complaint, "at oral argument plaintiff narrowed his request for damages to the $12,000 that he paid to defendant for the report and any incidental costs incurred in the matrimonial action resulting from the necessity of filing motions based on defendant's dissemination of the report." *Id.* Because these damages were not "damages for personal injuries, wrongful death or property damage," the Court held that the plaintiff's claim was not subject to the Statute. Though it continued on to address the "cause of action" element, the Court noted that it could "conclude [the] opinion at this juncture." *Id.*

Based on *Couri*, query whether Nuveen's action falls under the AOM Statute? *Couri* counsels that the "nature of the injury" element of the Statute is to be considered first. Nuveen is requesting only money damages arising from alleged acts of Withum and Lindabury. However, arguably the alleged acts have not caused "personal injuries, wrongful death or property damage," particularly if "property damage" refers to damage to physical property. We have found no decision from the New Jersey Supreme Court since *Couri* directly addressing the extent of the damages encompassed by

"damages for personal injuries, wrongful death or property damage."[16]

Indeed, the District Court based its holding that the action is subject to the AOM Statute on two New Jersey intermediate state court decisions—*Cornblatt v. Barow*, 696 A.2d 65 (N.J. Super. Ct. App. Div. 1997), and *Nagim v. New Jersey Transit*, 848 A.2d 61 (N.J. Super. Ct. Law Div. 2003). *Cornblatt* was decided before *Couri*. In *Nagim*, in holding that the asserted claim for defense costs pursuant to an indemnification contract was a claim for property damages within the meaning of the Statute, the Court distinguished *Couri* on the basis that the damages alleged in that action were for monies the plaintiff had paid to the expert under a contract, and not for any damages relating to malpractice. It emphasized that the claim under the indemnification contract was limited to defense costs if the defendant was found to be without fault, and that the underlying action for which the defendant was seeking indemnification regarded professional engineering services for the construction of a parking lot. It thereby determined that the damages related to claims of alleged professional malpractice causing "property damage,"

---

[16] Though the New Jersey Supreme Court recently stated that "[t]he [AOM] statute applies to all actions for damages based on professional malpractice," *Paragon*, 997 A.2d at 985, in making this statement it referenced *Charles A. Manganaro Consulting Eng'rs, Inc. v. Carneys Point Twp. Sewerage Auth.*, 781 A.2d 1116 (N.J. Super. Ct. App. Div. 2001), which was decided before *Couri*. It also did not analyze whether the Statute applied to the action, and only addressed the effect of the failure to hold the accelerated case management conference. *See Paragon*, 997 A.2d at 987. *Paragon* thus does not tell us what injuries are encompassed by the term "property damage" as used in the Statute.

including damage to tangible property. *Nagim*, 848 A.2d at 69–71. *Nagim* thus involved a claim for money damages arising from alleged malpractice causing damage to physical property. And its emphasis on the underlying cause of action may conflate the "nature of the injury" and "cause of action" elements of the Statute. In *Couri*, the New Jersey Supreme Court continued onto the analysis of whether the claims met the "cause of action" element only after it held that the damages requested did not meet the "nature of the injury" covered by the Statute, which it stated could have allowed it to end its inquiry.

In this context, we are in doubt whether the New Jersey Supreme Court would hold that the AOM Statute applies to actions requesting damages for alleged acts of professional malpractice or negligence that do not *cause* personal injuries, wrongful death or property damage. We are reluctant to speculate about how it would rule if confronted with a situation similar to the circumstances here. Accordingly, we shall certify to the New Jersey Supreme Court a question regarding the scope of the "nature of the injuries" element of the Statute, and postpone deciding if Nuveen's action is subject to the Statute.

### 2. What Claims Are Covered by the AOM Statute?

Nuveen asserts two intentional tort claims (common law fraud and aiding and abetting common law fraud) against Withum that are not the "malpractice or negligence" claims referenced by the text of the AOM Statute. *Couri* again is the only decision from the New Jersey Supreme Court addressing what types of claims are subject to the Statute. After holding that the "nature of the injury" asserted was not subject to the Statute, it addressed the "cause of action" element.

54

It is not the label placed on the action that is pivotal but the nature of the legal inquiry. Accordingly, when presented with a tort or contract claim asserted against a professional specified in the statute, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's underlying factual allegations require *proof* of a deviation from the professional standard of care applicable to that specific profession. If such proof is required, an affidavit of merit is required for that claim, unless some exception applies. . . .

[That analysis] will ensure that tort claims brought against licensed professionals that allege ordinary negligence, but not malpractice, will not be subject to the statute. Stated differently, *by asking whether a claim's underlying factual allegations require proof of a deviation from a professional standard of care, courts can assure that claims against licensed professionals acting in a professional capacity that [do not] require proof . . . of a deviation from professional standards are not encompassed by the statute.*

*Couri*, 801 A.2d at 1141 (emphases added). Based on these guidelines, the New Jersey Supreme Court held that the Statute did not apply because the asserted cause of action required proof that the expert breached the contract by distributing his preliminary report without the plaintiff's consent, not that the expert deviated from standards of professional conduct in doing so. *Id.* at 1142 ("Although defendant's unauthorized dissemination of the report also might implicate a deviation from prevailing professional

standards of practice, proof of that deviation is not essential to the establishment of plaintiff's right to recover based on breach of contract.").

Though Nuveen's fraud claims implicate Withum's purported failure to comply with accounting standards, Nuveen does not necessarily have to *prove* that Withum deviated from these standards to establish fraud. *See Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997) ("The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."). Rather, it has to prove that Withum intended to deceive it. As in *Couri*, though Withum's actions may suggest that it committed malpractice or acted negligently, proof of that malpractice or negligence is not necessary to the fraud claims. Indeed, Nuveen asserts a separate claim for negligent misrepresentation against Withum. The two fraud claims are distinct causes of action that may not be subject to the Statute. *See also Balthazar v. Atl. City Med. Ctr.*, 816 A.2d 1059, 1067–68 (N.J. Super. Ct. App. Div. 2003) ("[C]auses of action alleging intentional torts that *rely* for their success upon proof of a deviation from the professional standard of care applicable to the profession are subject to the affidavit of merit requirement, regardless of their label." (emphasis added)).

Moreover, the AOM Statute requires submission of an affidavit of merit as a prerequisite for "*any action* for damages for personal injuries, wrongful death or property damage *resulting from an alleged act of malpractice or negligence* by a licensed person in his profession or occupation . . . ." N.J. Stat. Ann. § 2A:53A-27 (emphasis added). Courts in states with similarly worded statutes

56

providing for the submission of some form of independent verification of professional malpractice or negligence actions have arrived at differing conclusions regarding whether their statutes apply to actions for fraud. *See, e.g.*, *Williams v. Boyle*, 72 P.3d 392, 399–400 (Colo. App. 2003) (holding that claims for fraudulent concealment and fraud were subject to Colorado's "certificate of review" statute, Colo. Rev. Stat. § 13-20-602); *Labovitz v. Hopkinson*, 519 S.E.2d 672, 678 (Ga. 1999) (concluding that, in enacting Georgia's similar statute, Ga. Code. Ann. § 9-11-9.1, "the legislative intent was to enact a statute which sought to reduce the number of frivolous professional malpractice actions by placing a procedural hurdle before those plaintiffs who sought damages for professional *negligence*. Those claims grounded on a professional's *intentional acts* which allegedly resulted in injury to one with whom the professional had a professional relationship are not required to be accompanied by an expert affidavit" (emphases in original)). These divergent conclusions also cause us to be uncertain how the New Jersey Supreme Court would interpret the AOM Statute.

Again we are reluctant to decide how that Court would rule in these circumstances. Thus we also will certify to it a question regarding whether intentional torts are subject to the Statute.

## VI. Conclusion

Nuveen's action is "related to" Bayonne's bankruptcy proceeding because the outcome of this action *conceivably* may affect a portion of the Bayonne estate's liabilities. As such, we affirm the District Court's holding that it had jurisdiction under 28 U.S.C. § 1334(b). Assuming that the action is subject to the AOM Statute, because Nuveen's failure to fulfill the affidavit requirement resulted from inadvertence, we agree with the Court's holding that

57

Nuveen's noncompliance cannot be excused under New Jersey law. However, we question whether the Statute applies to all or a portion of the claims alleged in the action. As the New Jersey Supreme Court can more definitively than we assess the "nature of the injury" and "cause of action" elements of the Statute, we reserve ruling on whether the action must be dismissed in whole or in part, and certify two questions addressing these elements to the New Jersey Supreme Court.[17]

---

[17] We believe that the New Jersey Supreme Court's answers to these two strictly legal issues, though framed by the factual circumstances here, will be amenable to many factual situations. Their resolution will clarify what constitutes "property damage" under the AOM Statute and to what extent the Statute applies to causes of action against professionals other than for malpractice and negligence, yet related to alleged acts of malpractice and negligence.

ALDISERT, Circuit Judge, dissenting.

I agree with the Majority's comprehensive treatment of many of the issues before our Court, and I therefore join in all parts of its opinion save one: the Majority's decision in Part V.C to make *no* decision about whether the Affidavit of Merit ("AOM") Statute applies here. The Majority has balked at exercising our duty to interpret state law when sitting in diversity, and has chosen instead to certify two questions to the New Jersey Supreme Court: (1) whether the money damages requested by Nuveen in this case are considered "property damages" under the AOM Statute; and (2) whether an action alleging an intentional tort, such as common law fraud or aiding and abetting common law fraud, is subject to the same statute.

Four federal judges have ruled on these issues; we seem to be divided on the result, two and two: District Judge Garret E. Brown Jr. and myself on one side, and my colleagues in the Majority on the other. It is thus difficult to say that those who now seek certification reflect the view of the Third Circuit that the New Jersey Supreme Court has not been adequately clear on the points in question.

We are charged with the responsibility of deciding state law issues contained in federal diversity cases, and we may not shirk that duty merely because those issues may be difficult, unwieldy, or ponderous. As Judge Jones said on our Court's behalf three-quarters of a century ago, when considering "the responsibility which Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), cast upon federal courts, of deciding questions of state law in diversity cases," we must "'not hesitate[] to decide questions of state law when

1

necessary for the disposition of a case brought to [us] for decision," even if "the highest court of the state ha[s] not answered them, the answers [are] difficult, and the character of the answers which the highest state courts might ultimately give remain[] uncertain.'" Comm'r of Internal Revenue v. Lewis, 141 F.2d 221, 225 (3d Cir. 1944) (quoting Meredith v. City of Winter Haven, 320 U.S. 228, 237 (1943)). This is especially so "where, as in the present instance, the pertinent question of local law is directly involved and is duly raised by the pleadings and the material facts as stipulated by the parties." Id.

In my view, certification should be limited to basic legal issues of great import, amenable to application in a large panoply of factual situations, rather than the fact-bound issues presented in this limited certification. See e.g., Arizonans for Official English v. Arizona, 520 U.S. 43, 79 (1997) ("Novel, unsettled questions of state law, however, not 'unique circumstances,' are necessary before federal courts may avail themselves of state certification procedures.") (quoting Yniguez v. Arizonans for Official English, 69 F.3d 920, 931 (9th Cir. 1995)). Because I conclude that the New Jersey Supreme Court's view has been expressed sufficiently to facilitate our review, I respectfully dissent from the certification to the New Jersey Supreme Court.

I.

The first issue the Majority certifies is whether the money damages sought by Nuveen are considered "property damages" under N.J. Stat. Ann. § 2A:53A-27, which provides that an affidavit of merit is required in actions seeking "damages for personal injuries, wrongful death or property

2

damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation." Certification of this issue is unnecessary because the New Jersey Supreme Court has already answered the question: "The [AOM] statute applies to *all actions for damages* based on professional malpractice." Paragon Contrs., Inc. v. Peachtree Condo. Ass'n, 997 A.2d 982, 985 (N.J. 2010) (emphasis added) (citation omitted).

A federal court sitting in diversity is "bound to follow state law as announced by the highest state court." Sheridan v. NGK Metals Corp., 609 F.3d 239, 253 (3rd Cir. 2010) (internal quotation marks and citation omitted). Here, the New Jersey Supreme Court has clearly expressed its view on the AOM Statute's applicability. Even if "the state's highest court has *not* addressed the precise question presented, [we] must [still] predict how the state's highest court would resolve the issue," rather than merely punt the issue to the state court because of a perceived lack of clarity. Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 n.15 (3d Cir. 1996) (emphasis added).

The Majority relies on the teachings of Couri v. Gardner, 801 A.2d 1134 (N.J. 2002), to explain their doubt as to whether the money damages sought here fall within the ambit of the AOM Statute. But Couri is factually distinguishable from this matter and does not sow seeds of doubt regarding the New Jersey Supreme Court's view of the issue currently before us. Unlike the plaintiff in Couri, who brought a breach-of-contract action seeking a finite sum of money he had *already paid* to the defendant, see 801 A.2d at 1141, here, Nuveen seeks the money it paid as part of a transaction with a non-party. Nuveen has not paid any money

3

to Appellees and has not brought a breach-of-contract claim against either Appellee. The New Jersey Supreme Court's view is unambiguous: because Nuveen's "action for damages [is] based on professional malpractice," the AOM statute applies. Paragon, 997 A.2d at 985.[1]

## II.

The second issue the Majority certifies is whether an action alleging an intentional tort, such as common law fraud or aiding and abetting common law fraud, is subject to N.J. Stat. Ann. § 2A:53A-27. But, once again, the New Jersey Supreme Court has already answered this question: "[W]hen

---

[1] Nuveen's interpretation of "property damages," moreover, would render the AOM Statute's provisions meaningless with respect to attorneys and accountants—the professions of Appellees here. For certain professionals, it is rare that malpractice would result in personal injuries or death. See Cornblatt v. Barow, 696 A.2d 65, 68 (N.J. Super. Ct. App. Div. 1997), rev'd on other grounds 708 A.2d 401 (N.J. 1998). If Nuveen were correct that "property damages" do not include money damages, the AOM Statute would hardly ever apply to attorneys or accountants and would essentially be confined to actions for medical malpractice. But both accountants and attorneys are professionals defined by the Statute as a "licensed person." N.J. Stat. Ann. § 2A:53A-26. New Jersey courts have held that it was not the legislature's intent to exclude these professions. See e.g., Cornblatt, 696 A.2d at 68 ("[A] claim against an attorney for alleged malpractice is a claim for property damage within the legislative intent and plain meaning of the statute.").

4

asserting a claim against a professional covered by the statute, whether in contract or in tort, a claimant should determine if the underlying factual allegations of the claim require proof of a deviation from the professional standard of care for that specific profession." Couri, 801 A.2d at 1141. "If such proof is required, an affidavit of merit shall be mandatory for that claim, unless either the statutory, N.J. Stat. Ann. § 2A:53A-28, or common knowledge exceptions apply." Id.

The instructions are clear; we must merely apply the rule to the facts before us—a task that New Jersey state courts have had no problem accomplishing. See e.g., Risko v. Ciocca, 812 A.2d 1138, 1142-1143 (N.J. Super. Ct. App. Div. 2003) (applying the teachings of Couri and concluding that "no exception is applicable in this case, which essentially deals with a claimed deviation in the standard of care, an affidavit of merit was required").

Here, Nuveen contends that intentional misrepresentations were made as a result of Withum's failure to abide by the Generally Accepted Accounting Principles ("GAAP") and the Generally Accepted Auditing Standards ("GAAS"). Thus, Nuveen's fraud claims plainly require proof that Withum deviated from professional standards of care. "[C]auses of action alleging intentional torts that rely for their success upon proof of deviation from the professional standard of care applicable to the profession are subject to the AOM requirement, regardless of their label." Balthazar v. Atlantic City Med. Ctr., 816 A.2d 1059, 1067 (N.J. Super. Ct. App. Div. 2003) (citing Couri, 801 A.2d 1134). Because the New Jersey Supreme Court has sufficiently expressed its view on the issue, certification is not warranted.

5

## III.

For the foregoing reasons, I respectfully disagree with the Majority and would not certify any questions to the New Jersey Supreme Court, but instead, would decide the state law issues properly before us.